## J. L. HUGHES v. TAUBEL-SCOTT-KITZMILLER CO.

Eastern Section.    April 30, 1927.

No petition for Certiorari was filed.

1. **Master and servant. A general or indefinite hiring is prima facie a hiring at will.**
   The rule is inflexible that a general or indefinite hiring is prima facie a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof.

2. **Master and servant. Evidence. Evidence held to show servant's contract was at will and not a yearly contract.**
   In an action to recover wages alleged to be due under a contract where the evidence showed that plaintiff was employed on a salary of $350 a month and that he was to get a bonus at the end of the year if he continued with the company, held that the evidence showed a contract at will and not a yearly contract.

Appeal from Chancery Court, Loudon County; Hon. James. H. Wallace, Chancellor.

Affirmed.

Webb, Baker & McDermott, of Knoxville, for appellant.

Cate, Smith, Tate & Long and Smith & Carlock, of Knoxville, for appellee.

SNODGRASS, J., This bill was filed to collect a balance of $2625 as salary, and $750 as a bonus, alleged to be due complainant as an employee of the defendants for the year 1923. It is insisted by the complainant that the contract was a yearly contract; that his discharge before it expired was without justification, and that he failed to get, though he diligently sought, other employment during the remaining portion of the year; that of this balance $2625 is due as salary at the rate of $350 per month, and the other is a bonus which under his contract would have been due him at the end of said year 1923.

The answer denied that the contract was a yearly contract as alleged by the complainant, but insisted that the contract was by the month or at will; that either party had the right to terminate the relationship, and that any bonus paid to employees was not as a result of any contract, but in the nature of a gratuity or Christmas present, dependent upon the prosperity of the business, continued employment and faithfulness of the employee, and the liberality of the directors, whose discretion was in no way coerced by any contract obligation. The answer set out the history of complainant's em-

ployment, kind and amount of bonus that had been paid him, and with respect to the particular year continued as follows:

"Respondent would show that nothing further passed between it and the complainant with respect to his employment, and complainant continued in its employ on this month to month basis until about November, 1922, when the chairman of its board of directors was again at the plant of respondent in Lenoir City and had another conversation with complainant with respect to the continuance of the employment, and at which time the chairman of the board of directors of respondent agreed to give to the complainant, in view of his services for the year 1922, a bonus or additional compensation in the sum of $750. Respondent would further show that it was agreed in this conference between complainant and its chairman of the board of directors that complainant would continue in the employment of respondent upon this month to month basis at the same salary as heretofore paid, and that should complainant be in the employ of respondent through December of 1923, and his services had continued satisfactory, and the company had done a satisfactory business, a bonus would be given to the complainant as the directors of said company deemed advisable, but the amount of said bonus was not mentioned or discussed by the parties, and in fact respondent was merely carrying out its usual custom and policy with all of its employees of giving to those whose services had proved satisfactory a sum of money as a bonus or extra compensation, but without any obligation upon its part whatsoever so to do, and the amount thereof was entirely within the judgment and discretion of the board of directors." With respect to the termination of the employment, the answer sets out:

"Respondent would further show that complainant continued in its employ under this arrangement when, on February 5, 1923, complainant wrote to Mr. Rufus W. Scott, chairman of respondent board of directors, at its office in New York City, a letter to the effect that he had been considering for some time a proposition from another concern, which had offered him more money than was being paid to him by respondent, and a prompt answer was asked by complainant as to whether or not respondent would meet the proposition which had been made to him by another concern. Thereupon respondent advised the complainant, through its local manager at Lenoir City, that it could not meet the proposition submitted in the letter of February 5, and suggested to him that he accept the employment tendered and sever his relationship with respondent. Complainant continued however in the service of respondent until April of 1923, when respondent assuming that complainant would in due time, as he had indicated in his letter of February 5, aforesaid, sever his connection with respondent, advised complainant that respondent

6 T. A.—28.

had secured the services of another party, who would take over the duties being performed by complainant at its mill in Lenoir City, and thereupon paid to complainant his salary for the month of April, and in addition delivered to complainant respondent's check for $175, or a half month's salary, which said check was accepted by complainant, and no protest whatsoever was made by complainant, nor was it claimed by him that he was in any manner wrongfully discharged, or that the severance of his connection with respondent was by any other than mutual consent." The answer denied that any thing was due him.

Proof was taken and the cause heard before the Chancellor, who dismissed the bill and taxed the complainant with the costs. From this decree the complainant has perfected an appeal to this court as assigns the following as errors:

"I.   The Chancellor erred in finding that the contract of employment entered into between the complainant and the defendant was a month to month contract.

"The Chancellor should have found that the complainant was employed by the year."

"II.   The Chancellor. erred in holding that under the contemporaneous construction of the parties the contract was a monthly employment contract.

"He should have held that the parties by their contemporaneous letters and acts had confirmed a yearly contract."

"III.   The court erred in finding that the bonus to be given complainant was contingent and was a gift, only to become due at the pleasure of defendant.

"The court should have held that the bonus was additional compensation to be paid yearly under the contract between complainant and defendant, and, complainant, having been wrongfully discharged, was entitled thereto."

"IV.   Having erred as aforesaid, the Chancellor erred in dismissing complainant's bill.

"He should have sustained the same and given complainant a decree for $2625 plus $750, together with interest from the date of the filing of the bill."

The Chancellor, after setting out the issues, found the facts as follows:

"I find it a fact that complainant, James L. Hughes, by an oral agreement between himself and Rufus W. Scott, Chairman of the board of directors of the defendants, Taubell-Scott-Kitzmiller Company, was employed as office manager for the defendant company at its mill in Lenoir City in November, 1922, at a monthly salary of $350 per month with the understanding should the complainant remain in this position up to and including December, 1923, that

the defendant company would, according to its custom with other employees, give to complainant an additional sum as a bonus which was regarded as a christmas gift, or reward for faithful and continuous service, but the giving of this bonus was contingent upon the successful business of defendant, as well as the continuance of complainant in its employ, and was to be fixed by the board of directors.

"It will be seen that the material question in controversy between the parties in this case is whether the contract of employment was yearly contract as contended for by complainant, or was a contract from month to month as contended for by defendant. The burden is upon complainant to establish his contention. I find that he has failed to sustain that burden, and that as a matter of fact the contract which he contends was made was not made or entered into by the parties. I find that the contract as contended for by the defendant was the one that was entered into and agreed upon, and that was that complainant was to receive a monthly salary of $350; that the employment was on a month to month basis; that complainant had a right to resign or leave the employment of the defendant within a year, and that the defendant had a right to discharge the complainant whenever it saw fit.

"I further find that this was the contemporaneous construction placed upon their contract by the parties. That complainant had at one time when he claims to have been working, a previous yearly contract, tendered his resignation, and further, that on February 5, 1923, he wrote to Mr. Rufus W. Scott, who was chairman of board of directors, and who had employed complainant, the following letter:

" 'Feb. 5, 1923.

" 'Mr. Rufus W. Scott,
" '25 Madison Ave., New York City.
" 'My dear Mr. Scott:—

" 'About the middle of November last year, I had before me an offer from another concern. Although it was financially a better position that I now have, I declined to accept it because I have along had faith in what you have said to me about taking care of me.

" 'Since the first of the year, and I still have the matter before me, I am offered a monthly salary of $500, and a bonus of $100 per month. I do not want to make a change, but I feel that I must have some definite understanding as to what you are willing to do. I must decide and let the other firm know my decision. Please let me know if you will meet the proposition, by wire.

" 'Thanking you for past courtesies, I am,
" 'Yours very truly,
" '(Signed) J. L. Hughes.'

"This letter was, as I construe it, a demand upon defendant for a larger salary than complainant claims he had a contract for, and if this demand was not met, he intended to leave defendants employment, and that he put a construction upon his contract that he had a right to sever his connection with defendant whenever he could better his circumstances or whenever he chose to do so.

"As a matter of fact the complainant did not have this offer which he claims to have had from Oco22 Copper Company of Chattanooga, Tennessee, but defendant assumed that he was telling the truth and that he intended to accept this alleged better offer if defendant would not agree to pay him a better salary, and thereupon defendant went to work to secure an office manager to take the place of complainant, and did secure one in the person of a man by the name of Caldwell, and as soon as he was secured he was sent to Lenoir City to take complainant's place about the latter part of April, 1922, when complainant was relieved from his duties and packed up and left.

"Defendant, Taubell-Scott-Kitzmiller Company, paid the complainant for the month of April, and in addition sent him a check for $175 being one-half months salary in addition which complainant accepted and cashed without any other claim or protest, even stating that he was an ordinary employee and should have been paid a month's salary instead of just two weeks salary which he received. That on May 12, after complainant had left defendants employment and had received the checks, one for his April salary and one for $175 being two weeks in addition, he wrote Mr. C. H Taubel, the defendant company, the following letter:

" 'Lenoir City, Tenn., May 12th, 1923.

" 'Mr. C. H. Taubel,

" 'Riverside, N. J.

" 'Dear Mr. Taubel:—

" 'When Mr. Regar handed me your letter and the checks he also admitted that I should at least have a further check to cover a thirty-day period and also my pro rata bonus up to and including the five months of this year. My arrangement as you no doubt will recall was on the same basis as for 1922.

" 'I am sure that it was not your intention to overlook this item. Thanking you for your kindness to attend to it at once, and awaiting your response, I am,

" 'Yours truly,

" 'J. L. Hughes.'

"I find as a fact that the defendant is not indebted to complainant for the amount sued for, or in any other amount, but that it had fully paid and settled with complainant several months before it was brought."

We have carefully examined the record and agree with the findings of the Chancellor, except there should be a correction of what is perhaps a clerical error as to what the complainant stated with reference to his relationship upon receiving the two weeks salary. Complainant said he "was a little more than just an ordinary employee and should have been given four weeks wages." According to the statement of Mr. Regar, who testified that, while there was no contract or understanding so far as he knew for the company to give any specific notice in regard to when their pay would stop, that it was customary in the textile business to give two weeks notice, and that that was what Taubel did with everybody who had a position with him, and that Hughes never claimed he had any contract for four weeks notice. It is insisted by the complainant that his contract for 1922 appears in writing by virtue of the following letter which he addressed to Mr. Scott, the chairman of the board of directors, confirmatory of their previous verbal understanding:

"Lenoir City, Tenn.,
"Nov. 15th, 1921.

"Personal
"Mr. Rufus W. Scott,
"Taubel-Scott-Kitzmiller Co.,
"25 Madison Ave., New York City, N. Y.
"My dear Mr. Scott:—

"Referring to your conversation with me, on Nov. 10th, while here, and confirming the verbal arrangement, my understanding is as follows: that on December 31, 1921 you will forward to me a bonus check in the sum of $300, and for the year 1922, my salary is to remain at the present sum but on December 31, 1922 you will forward to me a check in the sum of $750.

"Also, at the expiration of the above period, we will then be in a position to consider further arrangements for the future.

"I want to thank you for the consideration, and to assure you of my earnest and loyal efforts."

And by Mr. Scott's letter in reply, as follows:

"25 Madison Ave., New York,
"December 2, 1921.

"Mr. J. L. Hughes,
"c/o Taubel-Scott-Kitzmiller Co., Ins.,
"Lenoir City, Tenn.
"My dear Mr. Hughes:—

"We have your letter dated November 15th, confirming conversation with the writer while in Lenoir City, and your understanding of the matter is correct assuming that you are still in the employ of the company on December 31, 1922. We hope that you and your associates will be able to demonstrate within this time your ability

to bring this plant up to a much higher degree of efficiency than prevails at present, and have every belief that we will receive your best efforts to this end.

"We have had a very exhaustive talk with Mr. Regar relative to seconds. In the Tennessee group you develop nearly twice as many seconds as in any of our other mills. This can only come from lack of attention to details. Something very drastic must be done in this regard.

"Yours very truly,
"Taubel-Scott-Kitzmiller Co., Ins.
"Rufus W. Scott."

It is further insisted by complainant that he continued on through 1923 under the same arrangement, and that he is corroborated in this insistence by Mr. Regar, but after an examination of Mr. Regar's testimony it does not so appear. Upon this point Regar's testimony is as follows:

"Q. It was the fall of 1922 that Mr. Scott came down again and talked the matter over? A. Yes sir."

"Q. And Mr. Hughes continued on under the same contract that he had previously had? A. Yes sir, I imagine so."

This answer shows that Mr. Regar was not attempting to testify from any knowledge that he had of the situation, but that it was purely conjecture with him. He stated that he had not heard Mr. Scott and Hughes talk about it, but that "Mr. Scott came down to Lenoir City in the latter part of November, 1922, and he told me everything was satisfactory and that I was going to continue as manager of these Southern mills at the same salary, but that my bonus would be increased to three thousand dollars a year if I was with them at the end of December, 1923, same as the year before. Mr. Hughes later told me he had had a similar conversation with Mr. Scott to the effect that his wages would continue the same as they had been, and he was to have a bonus. His bonus was to be increased from $350 to $750 for the year 1923."

"Q. In the conversation were there any conditions as to what the bonus would be paid on? A. I was not present when this conversation took place."

"Q. In his conversation with you what did he say? A. Conditions were the same as mine, that I was to have it if I was there at the end of the year. We got our bonus for a Christmas present, I think, if I remember correctly."

Whatever, therefore, the letters may have evidenced as to what the contract was for 1922, by express statement it was not intended to be regarded as extending beyond that period. They show also that the bonus for the year 1921 was not determined until the latter part of the year, and while he had been promised an increase in the bonus

for 1922 to $750, we are satisfied it was upon condition that the generosity of the directors as stimulated by the prosperity of the business might authorize it. Without doubt, as appears from the reply letter, it was upon condition that complainant remain in the employ of defendant during the whole of the year 1922. This condition we think also negatives the idea that it was intended complainant should understand that he had engaged his services for the whole of the year 1922. We have no doubt that this employment was by the month as alleged in complainant's bill and as stated by Mr. Scott, who employed him. Mr. Scott testified that during the year 1921, up to the time that the Taubel-Scott-Kitzmiller Co. took over the plant, about the month of July or August, 1921, he as chairman of the board of directors visited the plant and stayed there for a short period; that he had a conference with James L. Hughes concerning his employment with the company; that he could not at that date recall the exact conversation, but in substance it was:

"I told him that I was satisfied that he continue with the company, in charge of the office, at a salary of $350 per month. I also told him that we, if occasion warrants it, sometimes make a monetary gift to employees of the firm of a Christmas present at the end of the year. I said to him that if on December, 31, 1921 he was still in the employ of the company, and had given satisfaction, and if the company had done a good volume of business at a satisfactory profit, he would be given a bonus of the type I had just told him about, but I said to him that such a bonus would not be definitely decided upon, and the amount as well as the gift depended as I said on the satisfaction that he would give, as well as on the business done by the company, that is, if the company did a good volume of business. He told me that he was pleased, and he expressed his thanks for our continuing him in the position. I might add that at the end of the year the board of directors voted him and he was given the sum of $300 as a bonus. I want to emphasize the fact that Hughes was at all times at liberty to resign, for we had no contract for any definite period. We were free to discharge him at any time. The only contract that he ever had with us was that he was to be paid while he was with us a salary of $350 per month. Not only was that his salary up to the time I had the conversation with him in July, 1921, but after that time. On this basis he continued in our employ until April, 1923." He said further:

"I desire to add to my previous testimony that this company never agreed to pay Mr. Hughes any definite amount as a bonus for the year 1923. His contract at that time by agreement with me personally was for $350 a month. I told him in 1921, and we never changed the status, that he was to receive $350 per month, and that, if conditions warranted it, that is if his services were satisfactory,

and if the company did well and made money, he would be remembered at Christmas and would be given a bonus, which would be his Christmas present on December 31st, if he were still on that date in the company's employ.''

At the time of this testimony Mr. Scott testified that he was no longer chairman of the board of directors, and that he was not connected in any way with the company.

So far as the record shows Mr. Scott appears to have been generous with his employees, and at the time of his testimony  had no personal interest to serve.  At least he is not impeached by any inconsistent attitude, and to say the least of it complainant cannot claim as much.   His action in writing the letter making . the false claim of an offer of employment from another party at a salary and bonus in excess of what he was receiving, or had any right to expect, shows him capable of falsehood and subterfuge.  It is true it is claimed for him that as early as February 5th, the date of the letter, he was only attempting to provide security for the new day that was to dawn on January following, but the excuse falls short of covering the offense, for according to Regar he admitted that he had no offer, and was trying only to serve the interest of both himself and Regar. His action in accepting his discharge without a protest of its invalidity, but claiming only that he should have received one months salary instead of two weeks, was a recognition at the time of the right to terminate the relationship.   The claim now advanced that it was a breach of contract savours too much of the· character of an afterthought to be given credence over other testimony to the effect that the contract was by the month.

It is insisted in the brief of counsel for defendant that under the letter and agreement for salary by the year does not make the employment a contract for the year, and in support of this contention numerous authorities are cited, among them 18 R. C. L., sec. 19, where it is said:

"As to the presumption to be indulged where the contract specifies no definite period, the courts are not in harmony.  In some jurisdictions it is presumed to be a hiring for a year, regardless of the nature of the service, unless there is a custom relating to the subject, and it appears that the contract was made with reference to the custom. ⸗ But in a majority of the states today such a contract is deemed to be a hiring at will and the burden of proving the contrary must be borne by the party who asserts that the employee is engaged for a denite period. The circumstance of agreeing on weekly, monthly, quarterly, or half-yearly payments of wages may be sufficient of itself to create the presumption of a hiring for the period covered by payment.   And so it has been held quite uniformly that a hir-

ing at a specified sum per month imports an engagement by the month. In case of a hiring at a specified sum per year, however, the courts are disagreed, some holding that the circumstance imports a hiring for a year, and others to the contrary. Perhaps the drift of modern judicial thought is in the direction of holding that in case of a hiring at so much per week, month or year, no presumption attaches that 'the hiring is for a day over, but that it is only a hiring at a fixed rate for whatever time the party may serve, so that the contract of employment may be ended at any time by either party without notice where there is no settled usage or custom to the contrary.''

Also the case of Martin v. New York Life Ins. Co., 148 N. Y., 117, 47 N. E., 416, where it is held, adopting the language of Wood on Master and Servant, Section 136, as follows:

''The rule is inflexible that a general or indefinite hiring is prima facie a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month, or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve . . . A contract to pay one $2500 a year for services is not a contract for the year, but a contract to pay at the rate of $2500 a year for services actually rendered, and is determinable at will by either party. Thus, it will be seen that the fact that the compensation is measured at so much a day, month or year does not necessarily make such hiring a hiring for a day, month, season or year, but that in all such cases the contract may be put an end to by either party at any time, unless the time is fixed, and a recovery had at the rate fixed for the services actually rendered.''

Also the case of Reasnor v. Watts, Ritter & Co., 51 L. R. A. (N. S.), 629, where it is held:

''An employment upon a monthly or annual salary, if no definite period is otherwise stated or proved for its continuance, is presumed to be a hiring at will, but either party may at any time determine at his pleasure without liability or breach of contract.

''The burden of proof that such hiring was obligatory for a year rests on the party who seeks to establish that the contract covered that period.

''Unless the understanding was mutual that the service was to extend for a certain fixed, and definite period, it is an indefinite hiring, and is determinable at the will of either party.''

Also the following cases: Givney v. Nat'l Jewelers Board of Trade, 144 N. Y. Supp., 321; Feiber v. Home Silk Mills, 143 N. Y. Supp., 1014; Cuppy v. Stowlwerk Bros., 143 N. Y. Supp., 967; Chadwick

v. Morris, 170 Ill. App., 569; Brookfield v. Drewry College, 139 Mo. App., 339, 123 S. W., 86, holding, respectively:

"Where an employee's salary is calculated on a semi-monthly basis, the hiring is at will, and he may be discharged at any time."

"A hiring at the rate of so much per year, no time being specified, is an indefinite hiring; and such a hiring is a hiring at will, and may be terminated at any time by either party."

"The acceptance of a proposition for employment at a specified rate for a year does not constitute an employment for a year, but merely at will."

"Where the testimony of an employee is that 'I told him (the employer) that the least I would go for was $1500 a year,' such evidence can be construed only to establish an employment at will at the specified rate."

"A hiring at $1,000 per year, without specifying the term of the employment, is a hiring at will, and may be terminated by either party at any time."

These authorities we think are applicable to this case, for, as indicated, we do not think the contract was for the period of a full year's service through 1923, but by the month, as found by the Chancellor. Complainant charged in his bill that the rate of compensation was to be $350 per month, with a bonus of $750 at the end of 1923, but it was insisted that the contract continued the rate for one year. As indicated we do not think even the contract for 1922 under the letter and reply was an engagement for the full year. It might have been so had the defendant not indicated a contingency of the earlier termination, defeating the bonus. But however it may be regarded, the contract for 1923 was verbally arranged between the complainant and Scott, whose testimony under the circumstances is entitled to stand as the verity of the transaction.

On the whole we think the assignments of error are without merit. They are all overruled and the decree of the Chancellor affirmed, with costs against appellant and his security on the appeal bond.

Portrum and Thompson, JJ., concur.