**Richard P. PRICE, Plaintiff-Appellant,**

**v.**

**MERCURY SUPPLY COMPANY, INC., Leonard Weil, and Ruth Weil, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Aug. 30, 1984.

Permission to Appeal Denied by Supreme Court Dec. 31, 1984.

Richard Manson, Nashville, for plaintiff-appellant.

William H. Lassiter, Jr., Nashville, for defendants-appellees.

## OPINION

KOCH, Judge.

Mr. Richard P. Price was discharged from his position as vice president in charge of sales for Mercury Supply Company, Inc. He filed this action against his former employers alleging breach of an oral employment contract, fraud, misrepresentation, and age discrimination. After a lengthy and at times acrimonious discovery process, the Chancery Court for Davidson County, Part III, granted the defendants' motion for a summary judgment pursuant to Rule 56 of the Tennessee Rules of Civil Procedure and dismissed Mr. Price's amended complaint. This appeal follows. For the reasons stated herein, we hold that the defendants were entitled to a summary judgment based upon the undisputed facts presented in this record.

Mr. Price commenced this action on August 10, 1981. Subsequently, on October 21, 1981, he filed an amended complaint setting out three causes of action. In substance, the complaint alleged that the defendants had breached an oral contract for lifetime employment by terminating Mr. Price without good cause. The complaint also alleged that by this termination, the defendants had discriminated against Mr. Price because of his age and were guilty of acts of fraud and misrepresentation.

The defendants filed an amended answer on May 14, 1982. Therein, they denied the material allegations in the amended complaint and raised the following three affirmative defenses: first, the alleged oral employment contract relied upon by Mr. Price was barred by the statute of frauds; second, that, in fact, no oral contract was ever made; and third, that the employment contract between the parties was terminable at the will of either party.

■ On July 20, 1982, the defendants filed an "Amended Motion for Summary Judgment and/or, in the Alternative, Motion to Dismiss" relying upon the affidavits of the defendants and certain discovery depositions of the parties and other witnesses. In their brief accompanying this motion, the defendants stated that there was no dispute concerning the material facts and argued that no oral employment contract ever came into existence and that they could not be found to be guilty of age discrimination because Mr. Price was not in the class of persons protected by Federal and state age discrimination statutes.[1]

■ On August 23, 1982, Mr. Price responded to this motion by filing a pleading styled as a "Motion Opposing Defendants' Motion for Summary Judgment"[2] stating that material factual disputes existed thereby rendering a summary judgment inappropriate. In the brief accompanying this pleading, Mr. Price stated that there are two disputed issues: first, the "issue of fraud" and second, "whether there is a contract."[3] Attached to this pleading was Mr. Price's affidavit dated August 23, 1982 and a copy of the written employment contract entered into by the parties on July 6, 1970. Later, on September 8, 1982, the affidavits of Mr. Price and his wife, signed on September 7, 1982, were filed in support of his opposition to the defendants' motion for summary judgment.

The trial court heard the defendants' motion on October 9, 1982. On December 29, 1982, the trial court entered a memorandum opinion granting the defendants a summary judgment. An order granting the defendants' motion for summary judgment was entered on January 7, 1983. Mr. Price tried unsuccessfully to appeal this decision thinking it was a final order.

■ On July 14, 1983, D. Price Supply Company, Inc. moved for a summary judgment challenging the defendants' third-party complaint. The trial court denied this motion on October 7, 1983. Subsequently, on October 11, 1983, pursuant to the defendants' motion in accordance with Rule 41.01 of the Tennessee Rules of Civil Procedure, the trial court dismissed the defendants' counterclaim and third-party claim. This order finally resolved all the issues between the parties. Mr. Price has now perfected this appeal on the basis that the defendants' motion for summary judgment should not have been granted because there are disputes of material facts between the parties.[4]

1. Both the defendants and the plaintiff filed briefs to support their pleadings pursuant to a local rule of court. While these briefs were not included in the appellate record originally certified to this Court, this Court, pursuant to Tenn.R.App.P. 24(e) ordered them to be filed, and they are now properly before this Court.

2. This pleading is foreign to the Tennessee Rules of Civil Procedure. It is not in accord with Tenn.R.Civ.P. 7.02(1). However, we will consider it as the plaintiff's response pursuant to Tenn.R.Civ.App. 56.05 to the defendants' motion for summary judgment.

3. These may be relevant legal issues, but they are not genuine issues of material fact required to be raised by Tenn.R.Civ.P. 56.05.

4. The defendants filed a motion to dismiss this appeal on November 30, 1983 based upon the plaintiff's failure to fully comply with Tenn.R. App.P. 5(a) by not serving a notice of appeal on counsel for the defendants. This Court remanded this matter to the trial court for disposition on December 13, 1983. Thereafter, on December 30, 1983, the defendants renewed their motion to dismiss the appeal in the trial court. While the record reveals that the trial court took certain action relating to the appellate record, there is no showing that any action was taken on the defendants' renewed motion by the trial court before the appellate record was transmitted to this Court by the Clerk and Master on January 26, 1984 pursuant to Tenn.R.App.P. 24. Since the defendants have fully participated in this appeal without prejudice and have not renewed their motion to dismiss since the record was filed in this Court, we find that they have waived their objection based upon Tenn.R. App.P. 5(a). In any event, this record demon-

■ This is an appeal from the trial court's decision to grant the defendants' motion for a summary judgment. Thus, our normal review pursuant to Rule 13(d) of the Tennessee Rules of Appellate Procedure does not apply. Instead, our role is to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure were met. *Hill v. City of Chattanooga*, 533 S.W.2d 311, 312 (Tenn.App. 1975). In making this determination, this Court views the pleadings, depositions, answers to interrogatories, admissions, and competent affidavits in a light most favorable to the opponent of the motion. Likewise, all legitimate conclusions from the record should be drawn in favor of the opponent of the motion. *Jones v. Home Indemnity Insurance Co.*, 651 S.W.2d 213, 214 (Tenn.1983) and *Bennett v. Mid-South Terminals Corp.*, 660 S.W.2d 799, 800 (Tenn.App.1983).

■ Our courts have repeatedly described the purpose of summary judgments and the circumstances when they are proper. These principles bear restating. A motion for summary judgment can provide a quick, less expensive means to conclude a case that can be disposed of on the legal issues alone because there are no disputed material facts. *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 500 (Tenn. 1981) and *Ferguson v. Tomerlin*, 656 S.W.2d 378, 382 (Tenn.App.1983). However, such motions cannot be used as substitutes for a trial of disputed factual issues. *Jones v. Home Indemnity Insurance Co.*, 651 S.W.2d 213, 214 (Tenn.1983). Thus, the Tennessee Supreme Court has held that any dispute over material facts or even an uncertainty as to whether there are disputed material facts will render granting a summary judgment improper. *Executone of Memphis, Inc. v. Garner*,

650 S.W.2d 734, 736 (Tenn.1983) and *Evco Corp. v. Ross*, 528 S.W.2d 20, 25 (Tenn. 1975). Even if the basic facts are not in dispute, this Court has held that granting a summary judgment is not proper when the parties disagree about the inferences to be drawn from the facts. *Prescott v. Adams*, 627 S.W.2d 134, 138–39 (Tenn.App.1981).

■ The Tennessee Rules of Civil Procedure contain explicit directions for opponents to a motion for summary judgment to follow. In part, Tenn.R.Civ.P. 56.05 provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or otherwise provided in this rule must set forth specific facts showing there is a genuine issue for trial.

The term "genuine issue for trial" referred to in Tenn.R.Civ.P. 56.05 connotes genuine *factual* issues. It does not include issues involving legal conclusions to be drawn from the facts. Thus, our courts have held that opponents to a motion for summary judgment should not take their predicament lightly and will be required to come forward with some "specific factual information," other than mere pleadings,[5] in support of their position if they wish to avoid a quick, unfavorable decision. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978) and *Ferguson v. Tomerlin*, 656 S.W.2d 378, 382 (Tenn.App.1983).

■ It follows, therefore, that if the opponent to a motion for summary judgment introduces no competent and material evidence demonstrating that a genuine issue of material fact exists, the trial court may grant the summary judgment by find-

strates substantial compliance with Tenn.R. App.P. 5(a), and therefore, pursuant to Tenn.R. App.P. 2 as construed in *G.F. Plunk Construction Co. v. Barrett Properties, Inc.*, 640 S.W.2d 215 (Tenn.1982), we suspend the requirements of Rule 5(a) as they apply to Mr. Price to the extent necessary.

5. Allegations in pleadings are not, by themselves, evidence of facts. *Hillhaven Corp. v.*

*State ex rel. Manor Care, Inc.*, 565 S.W.2d 210, 212 (Tenn.1978). Likewise, arguments of counsel in briefs and otherwise are not evidence. *Goodway Marketing, Inc. v. Faulkner Advertising Assoc., Inc.*, 545 F.Supp. 263, 268 n. 3 (E.D. Penn., 1982) and 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2723 n. 9 (1983).

ing that the moving party is entitled to a judgment as a matter of law. *Brookins v. The Round Table, Inc.*, 624 S.W.2d 547, 550 (Tenn.1981) and *Poppenheimer v. Bluff City Motor Homes*, 658 S.W.2d 106, 110 (Tenn.App.1983). A defendant is entitled to a summary judgment if the court determines that the complaint and undisputed facts in the record fail to state a claim upon which relief can be granted.

We have reviewed the pleadings and evidence in this record in the manner required by Tenn.R.Civ.App. 56 and have determined, for reasons different than those relied upon by the trial court, that the defendants were entitled to a judgment as a matter of law.

### The Material Facts

As Tenn.R.Civ.P. 56 requires, we have examined the pleadings in this case to determine which facts are material and then have considered the competent proof to determine whether there exist any genuine and material factual disputes. While Mr. Price's testimony in his depositions and affidavits is at times vague and contradictory, we have viewed his testimony as a whole in a light most favorable to him.[6] Based upon this review, we find that the following facts are uncontradicted or undisputed.

For many years prior to 1970, Mr. Leonard Weil operated a business known as Mercury Supply Company. This business sold cleaning materials and janitorial supplies in the Nashville and Middle Tennessee area. Mr. Weil had complete charge of the business, although his wife was a nominal partner.

In July, 1970, Mr. Price applied for and obtained a job as a salesman with Mercury Supply Company. On July 6, 1970, Mr. Price and Mr. Weil signed a written employment contract of indefinite duration which could be cancelled by either party for any reason upon fifteen days notice. Under this contract, Mr. Price was employed as a salesman, and his compensation consisted of a straight weekly salary as well as a commission based on the sales he actually made. This contract specifically provided that Mr. Price's compensation could be altered from time to time without affecting the validity of the rest of the contract.

The company prospered during the years immediately after 1970. Mr. Price and his employer, Mr. Weil, became friends, and Mr. Weil took a personal interest in Mr. Price and his family. In accordance with the contract, Mr. Price received annual salary increases in recognition of his performance.

In August, 1972, Mr. Price was given the title of sales coordinator. While he was still acting as a salesman, he also took on the responsibility to hire and train other salesmen. Later, in 1973, Mr. Price's title was changed to sales manager. His duties were still the same as they had been when he was the company's sales coordinator. Again, as permitted by the 1970 employment contract, the basis for Mr. Price's salary was changed so that in addition to his weekly salary and commissions based upon his personal sales, Mr. Price was entitled to receive an annual bonus based upon the company's annual profits as contained in the annual profit and loss statement. On June 30, 1974, Mr. Price received his first such bonus.

Mr. Weil continued to be pleased with Mr. Price's performance and told Mr. Price and others that Mr. Price was doing a good job and that his work was one of the reasons why the company's sales had increased.

In March, 1975, Mr. Price's title was changed to vice president for sales. There was no change in his compensation at that time. His duties remained the same as they had been when he was sales manager and sales coordinator.

---

**6.** The contradictions in Mr. Price's testimony are not sufficient to create a genuine issue of material fact. *Shearer v. Homestake Mining Co.*, 557 F.Supp. 549, 558 n. 5 (D.S.D.1983) and *U.S. v. Dercacz*, 530 F.Supp. 1348, 1351 (E.D.N.Y. 1982). See also 10A Wright, Miller & Kane, *Federal Practice and Procedure* §§ 2722, 2738 (1983).

During this time, Mr. Price states in his affidavits and depositions that Mr. Weil told him that he would never have to worry about employment because of the service he had rendered to the company in the past. Mr. Price also stated that Mr. Weil told him he would never have to worry about employment if he performed his duties and achieved a million dollars in sales. All parties agree that none of these statements were reduced to writing and that no new written contract was signed in March, 1975 or at any time thereafter.

In August, 1976, Mr. Weil decided to give Mr. Price two additional incentives consisting of an option to purchase five shares of stock of Mercury Supply Company and an enhanced bonus plan based upon the company's annual profits. Both these agreements were reduced to writing on August 19, 1976 and were given to Mr. Price. The stock option expired by its own terms on August 31, 1977, without Mr. Price exercising it. Even though the bonus plan expired by its own terms on July 1, 1977, Mr. Price continued to receive an annual bonus calculated in accordance with this agreement through June 30, 1980, the end of the last full fiscal year that Mr. Price worked for the company.

It was about this time that the relationship between Mr. Price and Mr. Weil cooled. While each person gave different reasons for this, this difference is not material. Both parties agree that they were experiencing difficulties. Mr. Weil went so far as to hire an industrial psychologist to help resolve these problems. In September, 1978, in the presence of this psychologist, Mr. Weil told Mr. Price that his performance was not satisfactory and gave him an ultimatum that if the situation did not improve, Mr. Price would be discharged.

The relationship between the two did not improve. Following a disagreement in February, 1981, concerning the manner in which Mr. Price conducted a sales meeting, Mr. Weil called Mr. Price into his office on March 2, 1981, and discharged him. The company's board of directors formally ratified this action by written resolution which provided that Mr. Price should receive six months severance pay—three months to be paid immediately and the remainder to be paid in June, 1981. On March 13, 1981, Mr. Weil sent Mr. Price a letter confirming the termination of his employment on March 2, 1981. Mr. Price was thirty-nine years of age at the time of his termination.

### The Breach of Contract Claim

The linchpin of Mr. Price's entire claim is his assertion that on March 5, 1975, the parties entered into a valid oral employment contract wherein Mr. Price was hired as the vice president for sales of Mercury Supply Company for the rest of his life or until he retired. If this contract is found not to exist or to be unenforceable, then Mr. Price has no basis for relief because as an employee-at-will, he could be discharged at any time for any reason upon receiving fifteen days notice.

After reviewing the proof, the trial court found that the oral contract allegedly entered into on March 5, 1975 was barred by Tenn.Code Ann. § 29–2–101(5), the provision of Tennessee's statute of frauds providing that no action shall be brought on a contract "which is not to be performed within the space of one (1) year from the making thereof" unless the contract itself is in writing and signed by the party to be charged. Relying upon *Dickens v. Tennessee Electric Power Co.*, 175 Tenn. 654, 137 S.W.2d 273 (1940), the trial court found that the oral employment contract was unenforceable because Mr. Price's retirement would take place beyond one year from the making of the contract.

We disagree with the trial court's legal conclusion in this regard.

■ A defense predicated upon the statute of frauds must, of necessity, presume that the parties had an agreement but that Tenn.Code Ann. § 29–2–101 renders this agreement unenforceable because it is one of those species of agreements required to be in writing. Tennessee's version of the statute of frauds, Tenn.Code Ann. § 29–2–101, was originally enacted in 1801. Like those existing in all other states except Louisiana, Tennessee's stat-

ute of frauds is patterned after the English Statute of Frauds and Perjuries enacted in 1677. Its purpose is to prevent frauds based upon oral testimony and to deter the formation of contracts based upon loose statements or innuendoes long after witnesses have become unavailable or when memories of the precise agreement have been dimmed by the passage of time. *Boutwell v. Lewis Bros. Lumber Co.*, 27 Tenn.App. 460, 465, 182 S.W.2d 1, 3 (1944). See also 2 A. Corbin, *Contracts* § 275 (1950); 72 Am.Jur.2d *Statute of Frauds* § 7 (1974); and 37 C.J.S. *Frauds, Statute of* § 1 (1943).

■ The portion of the statute of frauds at issue in this case, Tenn.Code Ann. § 29–2–101(5), which proscribes oral contracts not to be performed in one year from the time they are made is generally referred to as the *infra annum* provision. Of all the provisions of the statute of frauds, it is generally construed very narrowly by the courts, see 2 A. Corbin, *Contracts* § 444 (1950), because courts generally attempt to give effect to contracts rather than defeating them. Accordingly, our courts have declined to construe a contract to require performance over more than one year if to do so would render the contract unenforceable because of the statute of frauds. *Srygley v. City of Nashville*, 175 Tenn. 417, 420, 135 S.W.2d 451, 452 (1940).

■ The application of Tenn.Code Ann. § 29–2–101(5) has been construed many times by our courts. It is now well-settled that the determination concerning whether a particular agreement is included within the statute of frauds depends upon the terms of the agreement itself and the intentions of the parties at the precise moment the contract is made. *Johnston v. Cincinnati, N.O. & T.P. Ry. Co.*, 146 Tenn. 135, 147–48, 240 S.W. 429, 432–33 (1921); *Deaton v. Tennessee Coal and Railroad Co.*, 59 Tenn. (12 Heisk.) 650, 653–54 (1874); and *Leinau v. Smart*, 30 Tenn. (11 Hum.) 307, 310 (1850). This Court, adopting the view of the Restatement of Contracts held forty years ago that

The question is not what the probable, expected, or actual performance of the contract may be, but whether, according to the reasonable interpretation of its terms, it requires that it should not be performed within the year. Unless the court, looking at the contract in view of the surroundings, can say that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract.

*Boutwell v. Lewis Bros. Lumber Co.*, 27 Tenn.App. 460, 464, 182 S.W.2d 1, 3 (1944).

These decisions prompted Judge Allison Humphries, then serving on the Court of Appeals, to hold:

... it is now well settled that if a contract, when made, was in reality capable of full and bona fide performance with the year, it is to be considered as not within the statute.

*Anderson-Gregory Co. v. Lea*, 51 Tenn.App. 612, 616–17, 370 S.W.2d 934, 936 (1963).

The Tennessee Supreme Court has specifically held that an oral employment contract for an unspecified term is not subject to the statute of frauds because it is capable of complete, *bona fide* performance within one year of its making should the employee die within that time. *East Tennessee, Virginia & Georgia Railroad Co. v. Staub*, 75 Tenn. (7 Lea) 397, 400 (1881). This holding has been reaffirmed in numerous other cases. *Dickens v. Tennessee Electric Power Co.*, 175 Tenn. 654, 657, 137 S.W.2d 273, 274 (1940); *Boutwell v. Lewis Bros. Lumber Co.*, 27 Tenn.App. 460, 464, 182 S.W.2d 1, 3 (1944); and *Walker v. Walker*, 12 Tenn.App. 130, 137 (1930).

■ This is in accord with the view expressed by most courts and commentators. Succinctly stated, the majority rule is that an oral employment contract for an indefinite term that can be terminated at any time at the will of the parties is not within the statute of frauds because it is capable of being fully performed within one year either through the employee's death or by either party's decision to terminate the contract. Restatement (Second) of Contracts § 130, comment a, illustration 2

and comment b, illustration 6 (1979); A. Corbin, *Contracts* §§ 446, 451 (1950); 72 Am.Jur.2d *Statute of Frauds* §§ 11, 40, 42 n. 45 (1974) and 37 C.J.S. *Frauds, Statute of* §§ 49, 62c (1943). See also Annot., 60 A.L.R.3d 226 § 16 (1974).

When the disputed facts in this case are viewed in light of these precedents, it is clear that any oral contract between Mr. Price and Mercury Supply Company, if indeed there is a contract, would not be barred by the statute of frauds. Mr. Price himself stated that the term of this contract would be for life or until he decided to retire. Thus, it could be performed within one year because Mr. Price could have died or could have elected to retire within a year after the alleged contract was made. The fact that neither contingency occurred is not sufficient to bring the agreement within Tenn.Code Ann. § 29–2–101(5).

However, even if Mr. Price is able to avoid the statute of frauds, he will not necessarily be able to recover for a breach of contract unless he can show that a contract existed. The normal rules of contracts must still apply even if an agreement does not come within the statute of frauds. See 73 Am.Jur.2d *Statute of Frauds* § 514 (1974) and 37 C.J.S. *Frauds, Statute of* § 222 n. 80 (1943).

Like any other party attempting to prove the existence of a contract, Mr. Price is required to show that the agreement on which he relies was supported by adequate consideration,[7] that there was a mutual assent to the terms of the agreement and that it was sufficiently definite to be enforceable.[8]

The terms of the oral employment contract upon which Mr. Price rests his case can best be described in his own words.

The following exchange is illustrative of his understanding of the agreement:

QUESTION: In March of 1975, you have alleged, in your lawsuit, for several million dollars, that the July 6th, 1970 contract was terminated, and a new contract came into existence. And I asked you what the terms and conditions of the new contract were, and you said that one of the terms was that you had a contract or you had an agreement, for a lifetime, and you didn't have anything to worry about, for the rest of your life.

What was another term and condition of that contract?

MR. PRICE: I don't recall any other terms. All I recall was that this was for services that I had rendered, in the past.

Based upon Mr. Price's description of the purported oral contract entered into on March 5, 1975, we conclude that the undisputed evidence shows that no valid contract was ever formed at that time. Mr. Price states that the consideration for this contract was the services he had rendered to the company in the past. This is clearly inadequate consideration.[9] *Clark v. Small*, 14 Tenn. (6 Yer.) 417, 421 (1834). See also 17 Am.Jur.2d *Contracts* § 125 (1964) and 17 C.J.S. *Contracts* § 116 (1963). Further, Mr. Price's inability to describe the other material terms of the new contract with precision leads to the conclusion that Mr. Weil's statements about job security did not rise to the level of a contract but rather were statements of encouragement and approval of Mr. Price's work at that time.

While we think that the fair reading of this record supports the conclusion that no oral contract was ever formed on March 5, 1975, we are not unmindful that this case comes before us following a summary

---

7. *Smith v. Pickwick Electric Cooperative*, 212 Tenn. 62, 71–72 367 S.W.2d 775, 780 (1963) and *Clark v. Small*, 14 Tenn. (6 Yer.) 417, 421 (1834).

8. *American Lead Pencil Co. v. Nashville, Chattanooga & St. Louis Railway Co.*, 124 Tenn. 57, 63–64, 134 S.W. 613, 615 (1910); *Marshall v. Whites Creek Turnpike Co.*, 47 Tenn. (7 Cold.) 252 (1869); and *Forest, Inc. of Knoxville v.*

*Guaranty Mortgage Co.*, 534 S.W.2d 853, 857 (Tenn.App.1975).

9. Contrary to Mr. Price's assertion his lengthy employment for the defendants is inadequate consideration since he had already been paid. *Pearson v. Youngstown Sheet and Tube Co.*, 332 F.2d 439, 441 (7th Cir.1964), *cert. denied,* 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed.2d 185 (1964).

judgment. This requires us to indulge every presumption in favor of Mr. Price's testimony. This is difficult because much of his testimony is vague and contradictory. However, even if we infer from the record that Mr. Price and Mercury Supply Company entered into a new oral employment contract on March 7, 1975, there would still be no breach because this contract would be terminable at will.

Our courts have long held that an oral contract for life time employment or permanent employment amounts to an indefinite hiring terminable at the will of either party where the employee furnishes no consideration other than the services required in the agreement. *Combs v. Standard Oil Company of Louisiana*, 166 Tenn. 88, 90–92, 59 S.W.2d 525, 526–27 (1933); *Savage v. Spur Distributing Co.*, 33 Tenn.App. 27, 30–31, 228 S.W.2d 122, 124 (1950); and *Hughes v. Taubel-Scott-Kitzmiller Co.*, 6 Tenn.App. 432, 441 (1927). This being the case, an employee-at-will can be discharged without the breach of contract at any time for no cause at all. *Clanton v. Cain-Sloan Co.*, 677 S.W.2d 441 (Tenn.1984) and *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395, 396 (Tenn.App.1981).

Thus, even if this Court were to agree with Mr. Price's premise that an oral contract was formed on March 5, 1975, the undisputed facts in this record require the legal conclusion that this contract was not breached when Mr. Price was discharged because he was an employee-at-will. Thus, the defendants could discharge Mr. Price at any time without breaching the contract.

### The Age Discrimination Claim

Mr. Price also contended in his amended complaint that the defendants had discriminated against him in violation of 29 U.S.C. § 623 *et seq.* and Tenn.Code Ann. § 4–21–105 because he was terminated. The trial court found this age discrimination claim to be without merit because the undisputed proof was that Mr. Price was thirty-nine years of age at the time of his discharge and therefore he was not within the class of persons protected by these laws. Since

this issue is not contained in Mr. Price's briefs as required by Tenn.R.App.P. 27(a)(4), we conclude that Mr. Price is not contesting the validity of the trial court's decision.

### The Fraud and Misrepresentation Claim

Mr. Price finally alleged in his amended complaint that the defendants fraudulently induced him to become vice president for sales and to remain with the company by making certain misrepresentations. According to Mr. Price, these misrepresentations included: (1) compliments on his work, (2) statements of his value to the company, (3) statements that he would have a job until retirement if he continued to do his job, (4) an agreement to pay him a bonus based on the company's annual profits and (5) an offer to permit him to become part owner of the business.

While it is true that courts are reluctant to grant summary judgments to dispose of claims based upon fraud, a party asserting fraud, when confronted with a motion for summary judgment must produce some competent and material evidence to support his claim. *Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn.1978).

Upon examination of this record, we find no material fact presented by Mr. Price that would support a claim based upon fraud—promissory or otherwise. On the contrary, Mr. Price's own testimony defeats this claim because he repeatedly admits that the defendants honored all commitments to him except the perceived commitment for lifetime employment. This statement, even if made, cannot provide the basis of an allegation of fraud because, at most, it created a contract terminable at the will of either party. It is difficult to conclude that Mr. Price remained employed by the defendants as vice president for sales solely on the basis of this statement. He testified that his duties did not change when his title was changed to vice president for sales in March, 1975. He also conceded that, in fact, he was offered an opportunity to purchase stock in the com-

pany and agreed that for the last four years of his employment, his compensation was, in fact, based upon the company's annual profits.

### Production of Documents

The final issue raised by Mr. Price relates to the trial court's failure to order the defendants to produce certain documents requested in accordance with Tenn.R.Civ.P. 34. Decisions with regard to discovery matters are in the sound discretion of the trial court, and so appellate courts are reluctant to reverse a trial court's decision unless a clear abuse of discretion is demonstrated. *Payne v. Ramsey*, 591 S.W.2d 434, 436 (Tenn.1979); *Holt v. Webster*, 638 S.W.2d 391, 394 (Tenn. App.1982); and *Strickland v. Strickland*, 618 S.W.2d 496, 501 (Tenn.App.1981). See also 8 Wright & Miller, *Federal Practice and Procedure* § 2215 (1970). A trial court's decision involving discovery must be viewed in the context of the issues being tried and the posture of the case at the time the request for discovery is made.

The discovery request at issue here was preceeded by approximately one year of discovery taking the form of depositions of the parties and various witnesses, the filing of and answers to written interrogatories, and the submission of documents accompanied by sworn affidavits. Mr. Price was deposed twice. Numerous documents were requested and filed. Numerous documents requested by both parties were not filed but without subsequent objection. Both parties and their counsel at times exhibited a distinct lack of desire to facilitate this process. Both counsel threatened to seek redress in court and, in fact, did. Mr. Price himself was ordered by the trial court to answer certain questions propounded during his deposition after he refused to do so.

On September 9, 1982, Mr. Price filed a motion pursuant to Tenn.R.Civ.P. 34 requesting that the defendants be ordered to produce documents relating to the following matters: (1) the cost of the products purchased by the defendants for resale, (2) the sales records of certain employees, (3) the corporate profit and loss statements, (4) the annual corporate audits, and (5) the personal bank statements and tax returns of Mr. Weil and his wife. This motion specifically recited that these documents were necessary to help Mr. Price prove that the defendants had no good basis to terminate him. Also attached to this motion was correspondence from the defendants' counsel stating that many of these documents had already been produced and that others could not be produced because they had not been identified with reasonable particularity as required by Tenn.R.Civ.P. 34.02.

On September 22, 1982, the trial court entered an order reserving judgment on this motion until the hearing on the defendants' motion for summary judgment. There is nothing in the record before us to indicate that Mr. Price renewed his motion following the trial court's decision to grant a summary judgment in favor of the defendants.

Motions for the production of documents pursuant to Tenn.R.Civ.P. 34 are circumscribed by the requirement contained in Tenn.R.Civ.P. 26.02(1) requiring discovery to be limited to:

> any matter, not privileged, which is relevant to the subject matter of the pending action, whether it relates to the claims or defenses of the party seeking discovery or to the claims and defenses of any other party.

While the outer limits of "relevancy" are necessarily vague, see 8 Wright & Miller, *Federal Practice and Procedure* § 2008 n. 20 (1970), the United States Supreme Court, construing the Federal counterpart to Tenn.R.Civ.P. 26.02(1), held:

> "The key phrase in this definition—'relevant to the subject matter involved in the pending action'—has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."
>
> *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).

While Mr. Price's amended complaint prays for an award of back pay, there is no factual allegation in the com-

**936**

plaint that the defendants breached his employment contract by not paying him the compensation to which he was entitled. He testified that he had no basis to question the manner in which his bonuses were computed, and all the witnesses he deposed likewise testified that their bonuses were accurately paid and that mistakes were corrected when they were discovered. The purpose for which Mr. Price sought these documents in September, 1982, was not material because as a matter of law he was at most an employee-at-will who could be terminated at any time without good cause. Thus, it appears that the documents requested by Mr. Price prior to the summary judgment bore little relevance to the determinative issues in this case and their absence did not produce the summary judgment under review.

Upon our examination of the record, we do not conclude that the trial court abused its discretion by declining to order the production of the documents enumerated in the September 2, 1982 motion pursuant to Tenn.R.Civ.P. 34.

In sum, we hold that there is no genuine dispute concerning the facts that are material and relevant to the outcome of this case. Based upon these facts and undisputed testimony, we find that the defendants were entitled to a summary judgment as a matter of law because Mr. Price was an employee-at-will and, therefore, was subject to dismissal at any time for any reason or no reason. Further, Mr. Price's claims of age discrimination and fraud and misrepresentation must fail because there is no competent evidence in the record to support them.

Thus, the judgment of the trial court granting the defendants a summary judgment is affirmed. The Court also concludes that this is not a frivolus appeal, and therefore the defendants' motion pursuant to Tenn.Code Ann. § 27–1–122 is denied.

The costs of this appeal are taxed against Mr. Richard P. Price and his sureties for which execution, if necessary, may issue.

TODD, P.J., and CANTRELL, J., concur.