IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 2, 2016

## IN RE ESTATE OF LANA HOPSON REED

**Appeal from the Chancery Court for Greene County**
**No. 14P00160     Douglas T. Jenkins, Chancellor**
_____

**No. E2015-02372-COA-R3-CV-FILED-AUGUST 22, 2016**
_____

This case arises from an exception to a claim filed against decedent's estate. Appellant/Administratrix filed an exception to a claim brought by the Appellees, who are the decedent's parents. The trial court found that the Statute of Frauds, Tennessee Code Annotated Section 29-2-101, was not applicable to bar the claim. The trial court further held that the claimed amount was a loan to the decedent and not a gift as Appellant argued. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

E. Ronald Chestnut, Greeneville, Tennessee, for the appellant, Heather Reed.

Jeffrey A. Cobble, Greeneville, Tennessee, for the appellees, Dennis Hopson and Joyce J. Hopson.

**OPINION**

**I. Background**

Lana Hopson Reed ("Decedent") died intestate on December 21, 2013. On June 25, 2014, Decedent's daughter, Heather Dawn Reed ("Ms. Reed," or "Appellant") petitioned the Chancery Court of Greene County (the "trial court") to be appointed administratrix of

Decedent's estate (the "Estate"). On June 25, 2014, the trial court entered an order opening the Estate and appointing Ms. Reed as the administratrix.

Following publication of notice, several claims were filed against the Estate. The only claim excepted by the Estate was a claim for $28,571.35, which was filed by the Decedent's parents, Dennis and Joyce J. Hopson (together, "Appellees"). The debt of $28,571.35 was allegedly incurred by Decedent, in 2012, as a loan to pay off the mortgage on her home to prevent a foreclosure. The claim was supported by the affidavit of Dawn Allen, an employee of Bank of America in Greeneville, Tennessee. Ms. Allen stated, in relevant part:

3. That on April 20, 2012, I personally met with Dennis Hopson, Joyce Hopson, and their daughter Lana Reed in my office at Bank of America.

4. That I personally assisted with a wire transfer in the amount of $28,571.35 from the checking account of Dennis Hopson and wife, Joyce Hopson, to the Bank of America mortgage account of Lana Reed . . . . The purpose of [the] transfer was to pay off the mortgage account to prevent a foreclosure sale for [Decedent's home]. . . .

5. That I personally was involved in a conversation which occurred between Lana Reed and her parents, whereby it was agreed that the amount of the wire transfer was a loan to Lana Reed which she would repay to her parents.

On January 7, 2015, Appellant filed an exception to the claim, arguing that it was "barred by the Statute of Frauds." In an amendment to the claim exception, filed on August 4, 2015, Appellant also asserted that the claim was barred by the applicable statute of limitations.[1] The trial court heard the exception to the claim on August 5, 2015. By order of

---

[1] The Tennessee Rule of Civil Procedure 24(c) statement of the evidence provides that, "[a]lthough other grounds were submitted to the Court urging dismissal of the claim herein, counsel for the Administratrix/Appellant argued that the subject claim was violative of the Statute of Frauds . . . and this is the

November 9, 2015, the trial court sustained Appellees' claim, finding that the claim was not barred by the statute of frauds.

## II. Issue

Ms. Reed appeals. The sole issue for review, as stated in her brief, is:

Did the trial court err in finding that the subject claim against this estate herein, in the amount of $28,571.35 to not be [in] violation of the Statute of Frauds, T.C.A. § 29-2-101(a)(1) and in overruling the Exception of the Appellant/Administratrix of the Estate thereto.

## III. Standard of Review

Because this case was tried by the court, sitting without a jury, this Court conducts a de novo review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. ***Wood v. Starko***, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App.1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001). Furthermore, "[w]hen credibility and weight to be given testimony are at issue, considerable deference must be afforded the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." ***Mitchell v. Fayetteville***

only issue presented herein." From this statement, we glean that the statute of limitations defense was never pursued and was, inferentially, dismissed by the trial court. Regardless, the statute of limitations is not raised

- 3 -

*Pub. Utils.*, 368 S.W.3d 442, 447 (Tenn.2012).

## IV. Analysis

The appellate record does not contain a transcript of the August 5, 2016 hearing on the claim exception; however, Appellant has provided a statement of the evidence in compliance with Tennessee Rule of Appellate Procedure 24(c). The statement of the evidence provides, in pertinent part, as follows:

3. At the said hearing, the Claimant, Dennis Hopson testified that the claim was based on a loan to his daughter, the deceased, in the form of a wire transfer from Bank of America to pay off the pending mortgage on her home. Hopson testified that he told the decedent that the transfer was a loan in the presence of the Bank of America employee, Dawn Allen.

4. The Bank of America employee, Dawn Allen, testified that she remembered the transaction as a wire transfer and overheard a discussion involving Mr. Hopson and the decedent, wherein Mr. Hopson stated to the decedent that the wire transfer was a loan. Ms. Allen further testified that she did not remember what the decedent said, or if she said anything at all.

5. The Administratrix/Appellant, Heather Reed, testified that she was not present for the above transaction, but that her mother subsided [sic] on a total income of $1000.00 per month, and could not have been expected to pay back the above wire transfer and therefore, the transaction was likely contemplated as a gift.

Based on the foregoing proof, in its November 9, 2015 order, the trial court made the following, relevant findings:

We have father who is a claimant of his daughter's estate. I think we agree on the facts mostly, that during her lifetime, her house was about to be foreclosed on. Her Dad and Mom went and got the money in cash from their bank and then went to the daughter's bank and paid it off.

He didn't give her a check or anything . . . . [H]e just went and paid her house

as an issue in this appeal, and we will not address it herein.

- 4 -

off for her. In the presence of a bank employee, the father stated to the daughter—now this may not be exactly what he said—but he said, "I can't afford to just give you this. I am going to need you to pay this back."

The daughter completed the transaction. She certainly did not object to that. Although the bank employee couldn't remember if the daughter said anything verbally affirming a loan or not, the daughter certainly continued the transaction and accepted the money on the condition stated by her father.

And then, as time went on for a while, she didn't make any payments, and the [Decedent] passed away.

\*\*\*

And then, in the first part of the *Statute of* Frauds where it says that "a special promise of an Administrator or Executor". . . that's kind of what we are dealing with here. . . . I don't think that this transaction . . . is a debt [] barred by the statute of frauds.

So, I am going to overrule the Exception to the Claim. I am going to sustain the claim . . . . On the record, anytime a party claims something is a gift, they have got to prove it by clear and convincing evidence, and I don't think that burden of proof was met in this particular case to prove that this transaction was a gift. And the bank employee's testimony was very convincing to the Court. The decedent stood there and accepted the terms as laid out by her father when he paid her house off for her. . . .

The Statute of Frauds, Tennessee Code Annotated Section 29-2-101, provides, in relevant part, as follows:

(a)   No action shall be brought:

(1)   To charge any executor or administrator upon any special promise to answer any debt or damages out of such person's own estate;

(2)   To charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;

(3)   To charge any person upon any agreement made upon consideration of marriage;

- 5 -

(4) Upon any contract for the sale of lands . . .

(5) Upon any agreement or contract which is not to be performed within the space of one (1) year from the making of the agreement or contract; unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party. In a contract for the sale of lands, tenements, or hereditaments, the party to be charged is the party against whom enforcement of the contract is sought.

The trial court based its decision on two primary findings. First, it held that Statute of Frauds Section 29-2-101(a)(1), i.e., actions "[t]o charge an executor or administrator upon any special promise to answer any debt or damages out of such person's own estate," was inapplicable. Second, it held that the $28,571.35 was a loan, as opposed to a gift, and was, therefore, subject to repayment. Although Appellant limits her issue to whether the trial court erred "in finding that the subject claim against this estate herein, in the amount of $28,571.35 [was] not [in] violation of the Statute of Frauds, T.C.A. § 29-2-101(a)(1)," in the interest of full adjudication, we will address whether any of the sections of the Statute of Frauds apply in this case and, if not, whether the evidence supports the trial court's finding that the claimed amount was contemplated as a loan to Decedent. We note, at the outset, that the question of whether a particular agreement is included within the Statute of Frauds depends upon the terms of the agreement itself and the intentions of the parties at the precise moment the contract is made. *Johnston v. Cincinnati, N.O. & T.P. Ry. Co*., 240 S.W. 429, 432-33 (Tenn. 1921); *Deaton v. Tenn. Coal & R.R. Co.*, 59 Tenn. (12 Heisk.) 650, 653-54 (1874); and *Leinau v. Smart*, 30 Tenn. (11 Hum.) 307, 310 (1850).

Several clauses of the Statute of Frauds are clearly inapplicable here. In the first

instance, this case does not involve a defendant's "promise to answer for the debt . . . of another;" nor does it involve any "agreement made upon consideration of marriage." Accordingly, neither Section 29-2-101(a)(2) nor Section 29-2-101(a)(3) applies. Furthermore, although it is undisputed that Appellees' tendered the $28,571.35 to stop foreclosure on Decedent's home, there is no indication that the transaction involved any contract for the sale of land so as to trigger Section 29-2-101(a)(4) of the Statute of Frauds. Having ruled out application of these sections of the Statute of Frauds, we turn to address the remaining sections, i.e., the executor-administrator provision at Section 29-2-101(a)(1), and the more than one-year provision at Section 29-2-101(a)(5).

In sustaining Appellees' claim against the Estate, the trial court relied primarily on the inapplicability of the executor-administrator provision at Section 29-2-101(a)(1). This provision has been explained by commentators as follows:

> T.C.A. § 29-2-101(a)(1) prohibits an action to "charge any executor or administrator upon any special promise to answer any debt or damages out of such person's own estate." As explained by the *Restatement (Second) of Contracts*, the promise requires written evidence where the administrator or executor answers personally for a duty of the decedent, and where a similar contract to answer for the duty of a living person would be within the suretyship provision of the statute of frauds.

21 *Tenn. Prac. Contract Law and Practice* § 2:9 (Footnotes omitted).

In *Perlberg v. Jahn*, 773 S.W.2d 925 (Tenn. Ct. App. 1989), this Court held that the executor-administrator clause of the Statute of Frauds covers only those representative promises to pay for the decedent's claims out of the representative's own estate:

> In order to bring a promise within this section of the statute, the personal representative's promise must be to pay out of his own estate; a

promise to pay out of the estate of decedent is not within the statute. Where there are assets in the hands of the personal representative, his promise to pay a debt of the estate is a promise to answer out of decedent's estate, not out of his own estate, and is not within the statute; but it is otherwise where there are no assets, as then the promise is necessarily one to answer out of his own estate.

. . .

The statute applies only to the personal representative's collateral promise to pay a debt of decedent as distinguished from an original undertaking to discharge his own obligation. The personal representative's obligations contracted in the course of his administration, although proper charges against the estate, are his private debts for which he is personally liable . . . and oral promises of this nature, such as promises to pay for merchandise, legal services, a broker's commission, and funeral expense, are original undertakings and not within the statute.

*Perlberg*, 773 S.W.2d at 927 (quoting 57 C.J.S. Frauds, Statute of, III, Promises by Executors and Administrators, §§ 8-9, at 518-19). Here, there was no special promise on the part of the executor of the Estate to undertake the disputed debt; there is also no proof that the Estate is insolvent. Accordingly, we hold that the executor-administrator clause of the Statute of Frauds is not applicable in this case.

The Statement of the Evidence reflects Appellant's testimony that Decedent subsisted on $1,000 per month and could not have possibly repaid a $28,571.35 loan. Although it appears that Appellant gave this testimony in support of her contention that the payment was a gift and not a loan, even if we allow, *arguendo*, that this testimony was made to demonstrate that Section 29-2-101(a)(5) of the Statute of Frauds, requiring a writing to enforce a contract that cannot be performed within one-year, was applicable, there is simply insufficient evidence in the record to support such a finding. As this Court explained in *Price v. Mercury Supply Co., Inc.*, 682 S.W.2d 924 (Tenn. Ct. App. 1984):

The portion of the statute of frauds at issue in this case, Tenn. Code Ann. § 29-2-101(5), which proscribes oral contracts not to be performed in one year from the time they are made is generally referred to as the infra annum provision. Of all the provisions of the statute of frauds, it is generally construed very narrowly by the courts, *see* 2 A. Corbin, Contracts § 444 (1950), because courts generally attempt to give effect to contracts rather than defeating them. Accordingly, our courts have declined to construe a contract to require performance over more than one year if to do so would render the contract unenforceable because of the statute of frauds. ***Srygley v. City of Nashville***, 175 Tenn. 417, 420, 135 S.W.2d 451, 452 (1940).

The application of Tenn. Code Ann. § 29-2-101(5) has been construed many times by our courts. . . . This Court, adopting the view of the Restatement of Contracts held forty years ago that

> [t]he question is not what the probable, expected, or actual performance of the contract may be, but whether, according to the reasonable interpretation of its terms, it requires that it should not be performed within the year. Unless the court, looking at the contract in view of the surroundings, can say that in no reasonable probability can such agreement be performed within the year, it is its duty to uphold the contract.

***Boutwell v. Lewis Bros. Lumber Co.***, 27 Tenn. App. 460, 464, 182 S.W.2d 1, 3 (1944).

These decisions prompted Judge Humphries of the Court of Appeals, to hold:

> ... it is now well settled that if a contract, when made, was in reality capable of full and bona fide performance with the year, it is to be considered as not within the statute.

***Anderson-Gregory Co. v. Lea***, 51 Tenn. App. 612, 616-17, 370 S.W.2d 934, 936 (1963).

***Price***, 682 S.W.2d at 932.

Turning to the record, the only evidence that could possibly support a finding that Decedent could not repay the $28,571.35 within a year was Appellant's testimony that

- 9 -

Decedent's income was not more than $1,000 per month. Because we must narrowly construe Section 29-2-101(a)(5), the mere fact that Decedent had limited income, standing alone, does not, *ipso facto*, support a conclusion that she could not repay the money within the year. As discussed in ***Birdwell v. Psimer,*** 151 S.W.3d 916 (Tenn. Ct. App. 2004):

> [T]here must be evidence to demonstrate that the parties specifically agreed that the contract absolutely would not be performed within one year for it to run afoul of the statute of frauds. ***Johnston v. Cincinnati N.O. & T.P. Ry***., 146 Tenn. 135, 240 S.W. 429 (1922). It is not sufficient to show that it is not reasonably possible to perform the contract within a year, or that such would probably not be done, or that a certain contingency which would bring it within the year time period did not occur. ***Id***., *see also* ***Davidson v. Holtzman***, 47 S.W.3d 445 (Tenn. Ct. App. 2000); ***Price v. Mercury Supply Co., Inc***., 682 S.W.2d 924 (Tenn.Ct.App.1984).

***Birdwell***, 151 S.W.3d at 919. Here, there is no evidence concerning the timeframe for repayment of the $28,571.35. There is only the evidence that Appellees intended the money as a loan to Decedent that would be repaid at some point. Although Appellant argues that Decedent could not have paid the loan back due to her limited income, as explained above, "[i]t is not sufficient to show that it is not reasonably possible to perform the contract within a year, or that such would probably not be done." ***Id***. Accordingly, we conclude that Section 29-2-101(5) is inapplicable to bar Appellees' claim against the Estate.

The only question remaining is whether the $28,571.35 was contemplated as a gift to the Decedent. "[I]n order to sustain a gift inter vivos . . . the evidence must be clear and convincing." ***Ingram v. Phillips***, 684 S.W.2d 954, 957 (Tenn. Ct. App. 1985) (citing 38 Am.Jur.2d *Gifts* § 103, p. 903; ***Atchley v. Rimmer***, 148 Tenn. 303, 255 S.W. 366 (1923)). The trial court found that the $28,571.35 was a loan from Appellees to Decedent, which

was to be paid back to them. In reaching this decision, the trial court specifically stated that the bank employee, Dawn Allen's, testimony "was very convincing to the Court."[2] As discussed above, "[w]hen credibility and weight to be given testimony are at issue, considerable deference must be afforded the trial court when the trial judge had the opportunity to observe the witness' demeanor and to hear in-court testimony." *Mitchell*, 368 S.W.3d at 447. Ms. Allen testified that she overheard Mr. Hopson state to Decedent that the wire transfer was a loan. There is no evidence that the Decedent objected to that characterization of the payment. However, as the trial court found, the evidence shows that Decedent took the payment without further discussion. Thus, the evidence does not clearly and convincingly support Appellant's contention that the $28,571.35 was intended as a gift. Rather, it supports the trial court's finding that the funds were intended as a loan to the Decedent for which her Estate should bear the cost of repayment.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Heather Reed and her surety, for all of which execution may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE

---

[2] The record reflects that the trial court, in making its credibility finding, is addressing Ms. Allen's oral testimony at the trial that took place on August 5, 2015 and is not referring to the statements made in her affidavit that was filed with the Probate Court on December 1, 2014 in support of the Appellees' claim.