IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 22, 2018 Session

## IN RE P. G.

**Appeal from the Chancery Court for Robertson County**
**No. CH17-CV-61    Laurence M. McMillan, Jr., Chancellor**

_____

### No. M2017-02291-COA-R3-PT

_____

Both parties appeal from the trial court's order finding two grounds to terminate Mother's parental rights, but ultimately concluding that termination was not in the child's best interests. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

Russell E. Edwards, Hendersonville, Tennessee, for the appellant, Jennifer G. and Eric G.

John E. Evans, Springfield, Tennessee, for the appellee, Kelci G.

## OPINION

### Background

The child at issue was born in February 2009 to unmarried parents Petitioner/Appellant Eric G. ("Father") and Respondent/Appellee Kelci G. ("Mother").[1] Father filed a petition to establish paternity in Sumner County Juvenile Court in 2011. Mother was initially named primary residential parent. Later, however, Mother became involved in drugs. As such, Father returned to court in 2012 to modify the custody award. At a November 27, 2012 hearing, Father was named temporary primary residential parent of the child. Mother was awarded daytime supervised visitation to be scheduled between the parties. Mother's visits were to be supervised by Father, Mother's father, Mother's

_____

[1]  In cases involving termination of parental rights, it is the policy of this Court to remove the names of minor children and other parties in order to protect their identities.

step-mother, Father's mother, or Mother's grandmother. A final order naming Father primary residential parent, maintaining the current visitation plan, and ordering Mother to pay $100.00 per month in child support was entered on November 9, 2015.[2] There is no dispute that for much of 2012 and until the filing of the termination petition, the child resided 100% of the time with Father.

In the meantime, both Mother and Father married. Father married Petitioner/Appellant Jennifer G. ("Step-Mother") in 2015, although they began living together in 2013. By the time of trial, they had one child together. Mother meanwhile married her husband in 2013 and they had two children together by the time of trial. While Father and the child reside in Springfield, Tennessee, Mother, her husband, and their two children reside in Sevierville, Tennessee, a little less than four hours' drive away.

On February 6, 2017, Father and Step-Mother (together, "Appellants") filed a petition to terminate Mother's parental rights in the Robertson County Chancery Court ("the trial court"). The petition alleged that Mother had abandoned the child by willfully failing to visit or support him four months prior to filing of the petition and that termination was in the child's best interests. Mother responded by filing a motion to dismiss the petition on the grounds that it failed to contain the notice required by Rule 9A of the Tennessee Rules of the Supreme Court, failed to contain necessary statistical information, failed to note that the proceedings would forever terminate Mother's parental rights, failed to state that Appellants consulted the putative father registry prior to filing the petition, failed to provide sufficient service of process, and failed to state a claim. Appellants responded in opposition to the motion.

On March 17, 2017, Appellants filed an amended petition in an attempt to correct the procedural deficiencies noted in Mother's motion to dismiss. The trial court held a hearing on Mother's motion to dismiss on April 10, 2017. On May 1, 2017, the trial court entered an order denying the motion, crediting Appellants' arguments that the amended petition was timely and corrected the deficiencies in the original petition. The trial court also ruled that the amended petition would relate back to the time of the filing of the initial petition. Mother thereafter filed an answer to the amended petition, denying the material allegations contained therein.

In July 2017, Appellants filed a subpoena to the Sevier County Juvenile Court asking that the clerk permit Appellants to inspect all juvenile records pertaining to litigation in which Mother was involved in the last four years. The clerk of the Sevier County Juvenile Court eventually released the records, under seal, to the trial court. Appellants thereafter filed a motion in the trial court for release of the records. At the

_____

[2] Mother was not present for the final hearing. The order states that Mother was served with notice of the hearing and even acknowledged to Father that she was aware of the hearing date.

commencement of trial, the trial court denied the motion and the records were not released.

A trial occurred on August 23, 2017. Father, Step-Mother, Mother, and Maternal Grandmother testified. Father and Step-Mother generally testified that Mother had essentially abandoned the child to their care from 2015 until the filing of the termination petition. There was no dispute that Father and Step-Mother offered the child a loving and stable home and that all of his physical and emotional needs were being met by them.

According to Father and Step-Mother, during the four months preceding the filing of the initial termination petition, Mother had a single weekend of unplanned visitation with the child in December 2016. Father testified that in the year prior to that visitation, Mother's only effort to contact the child was a birthday phone call in February 2016. Mother did participate in a February 2015 visit with the child and had engaged in some supervised visitation prior to that date. According to Father, Mother also paid no child support during this time. Father admitted that Mother had called to ask what the child wanted for Christmas in December 2016 and to determine whether the child would be attending Christmas at Maternal Grandmother's home. Father informed Mother that there was no plan for the child to attend. With regard to the Christmas gift, Father replied that the child would like an Easter basket that had been promised the previous spring and never delivered. There was no dispute, however, that following the filing of the initial termination petition, Mother and the child had four visits, Mother made twice-weekly phone calls to the child, and Mother paid $700.00 in child support.[3]

Mother admitted that she had previously been involved in illegal activity and drug use in the years following the child's birth. In 2011, Mother pleaded guilty to two drug-related crimes, for which she received a sentence of four years' probation. Mother later attended drug rehabilitation in 2012 for opiate use. Mother admitted, however, that she used heroin as late as 2015 when she agreed to place her middle child in the care of her paternal grandparents. During this time, Mother's husband was arrested, his probation violated, and he served some time in jail;[4] Mother testified that she had "no clue" as to the charges against her husband that led to this jail sentence. The placement of Mother's second child continued well into 2016, when Mother testified that she attended a second program of drug rehabilitation. By the time of trial, however, the child had been returned to Mother's care for over a year, as Mother testified that both she and her husband were free from drugs and criminal activity for the year and a half prior to trial.[5] At the time of trial, there was no dispute that Mother's husband was still serving a sentence of probation.

---

[3] The total amount was made in two payments: (1) one payment in March 2017; and (2) a second $400.00 payment the weekend before trial.

[4] Mother's husband had previously been convicted of robbery.

[5] Mother testified that she could pass a drug screen if requested. The record contains no drug screen requests or results.

Mother agreed that other than the December 2016 wedding, she had no visitation with the child in the four months prior to the filing of the initial petition. Mother blamed the lack of visits variously on the restrictions placed on her visitation, the distance between her current home and the town where the child resides, her lack of reliable transportation during this time, and her high risk pregnancy. Mother admitted, however, that she was able to attend the December 2016 wedding and that she made other trips to the town where the child resides without making an effort to reach out to Father to schedule visitation.[6] Mother also admitted that Father did not deny any specific requests made by her for visitation either during this period or in the years prior. According to Mother, her failure to visit with the child was the result of an effort to maintain her sobriety for a period of time before she attempted to renew visitation with the child.

According to both Mother and Maternal Grandmother, however, Mother and the child's relationship did not suffer due to Mother's absence. Instead, they testified that during the December 2016 wedding visit, the child acted loving toward Mother and his sibling.[7] In the visits that followed the filing of the initial termination petition, Mother testified that the child exhibited a particularly close bond with Mother's younger children.

Following the conclusion of trial, the parties submitted proposed findings of fact and conclusions of law. The trial court entered a written memorandum opinion and order on November 2, 2017.The trial court ruled that Mother abandoned the child by willfully failing to visit and support the child in the four months prior to the filing of the initial termination petition, i.e., prior to February 6, 2017. The trial court ruled, however, that Appellants failed to present sufficient evidence that termination was in the child's best interests. As such, the trial court denied the petition to terminate Mother's parental rights.

### Issues Presented

The parties each raise several issues in this case, which we will address in the following order:

1. Whether the trial court erred when it denied Mother's motion to dismiss the petition.
2. Whether the trial court erred when it allowed Appellants to file an amended petition and relate back their amended petition to the date of filing of the original petition.
3. Whether the trial court erred in denying Appellants' motion to release records filed in the trial court under seal from the Sevier County Juvenile Court.

---

[6] Indeed, Father testified without dispute that he was not contacted regarding visitation with Mother during the December 2016 wedding. Rather, he testified that he was completely unaware that Mother would be attending.

[7] Mother was pregnant with her third child during this time.

4. Whether the trial court erred in determining that grounds existed to terminate Mother's parental rights due to abandonment pursuant to Tenn. Code Ann. § 36-1-113(g)(1).
5. Whether the trial court erred when it determined that termination of Mother's parental rights was not in the child's best interests.
6. Whether Appellants should be assessed attorney's fees incurred by Mother.

**Standard of Review**

The Tennessee Supreme Court has explained that:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547–48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578–79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as parens patriae has a special duty to protect minors. . . .' Tennessee law, thus, upholds the [S]tate's authority as parens patriae when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250.

*In re Carrington H.*, 483 S.W.3d 507, 522–23 (Tenn. 2016) (footnote omitted). In Tennessee, termination of parental rights is governed by statute which identifies "'situations in which that state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618 at *7 (Tenn. Ct. App. Apr. 29. 2005) (citing Tenn. Code Ann. § 36-1-113(g)). Thus, a party seeking to terminate a parent's rights must prove (1) existence of one of the statutory grounds and (2) that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Considering the fundamental nature of a parent's rights, and the serious consequences that stem from termination of those rights, a higher standard of proof is required in determining termination cases. *Santosky*, 455 U.S. at 769. As such, a party

must prove statutory grounds and the child's best interest by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c); *In re Valentine*, 79 S.W. 3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from evidence[,]" and "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

In termination cases, appellate courts review a trial court's factual findings de novo and accord these findings a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Carrington H.*, 483 S.W at 523−24 (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007)). Our supreme court further explains:

> The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.,* 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.,* 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W at 524.

Lastly, in the event that the "resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge, who has had the opportunity to observe the witnesses and their manner and demeanor while testifying, is in a far better position than this Court to decide those issues." *In re Navada N.*, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016) (citing *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997)). This Court therefore "gives great weight to the credibility accorded to a particular witness by the trial court." *In re Christopher J.*, No. W2016-02149-COA-R3-PT, 2017 WL 5992359, at \*3 (Tenn. Ct. App. Dec. 4, 2017) (citing *Whitaker*, 957 S.W.2d at 837).

## Discussion

### Motion to Dismiss and Relation Back of Amendment

Mother first asserts that the trial court erred in denying her motion to dismiss and in ruling that the amended petition filed by Appellants would relate back to the filing date of the initial petition. Here, Mother filed a motion to dismiss on the grounds that the initial petition was deficient where it failed to contain information required by Rule 9A of

the Rules of the Tennessee Supreme Court, failed to provide necessary statistical information, failed to state that the granting of the petition would forever terminate Mother's rights to the child, and failed to reference a check of the putative father registry. Additionally, the motion argued that dismissal was warranted where Mother was not personally served with process and where the petition failed to state a claim upon which relief could be granted. The trial court eventually allowed Appellants to amend the petition to correct the deficiencies in the petition, holding that the amended petition would relate back to the filing of the original petition. The trial court also denied the motion to dismiss.

We begin with Mother's argument that she was not properly served with process in this case. Pursuant to Rule 4.04 of the Tennessee Rules of Civil Procedure,

> The plaintiff shall furnish the person making the service with such copies of the summons and complaint as are necessary. Service shall be made as follows:
>
> (1) Upon an individual other than an unmarried infant or an incompetent person, by delivering a copy of the summons and of the complaint to the individual personally, or if he or she evades or attempts to evade service, by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein, whose name shall appear on the proof of service, or by delivering the copies to an agent authorized by appointment or by law to receive service on behalf of the individual served.

"'Service of process which does not meet the requirements of the rule is void, and a judgment based on void service of process is a void judgment.'" ***Novack v. Fowler***, No. W2011-01371-COA-R9-CV, 2012 WL 403881, at *6 (Tenn. Ct. App. Feb. 9, 2012) (quoting ***Wallace v. Wallace***, No. 01A01-9512-CH-00579, 1996 WL 411627, at *2 (Tenn. Ct. App. July, 24, 1996)); *see also* ***Hall v. Haynes***, 319 S.W.3d 564, 572 (Tenn.2010) ("Actual notice of a lawsuit is not a substitute for service of process when the rules of civil procedure so require.").

Here, there is no dispute that Mother was not personally served with process. The question in this case is whether Mother's actions are sufficient to show that she was evading service of process so as to allow substitute service at her dwelling pursuant to Rule 4.04. In order to resolve this issue, we note that no evidentiary hearing appears to have been conducted to determine whether service was proper on Mother. Indeed, Mother's motion to dismiss specifically stated that the initial petition "fails on its face and should be dismissed." The record does contain, however, the return of service with a handwritten notice from the private process server tasked with serving Mother. Mother did not in any way dispute the private process server's notation in this case. As such, we take the facts contained in the notation as undisputed for purposes of this appeal.

The undisputed facts show that the private process server attempted to serve Mother at her home, Maternal Grandmother answered the door, stated that Mother would not come downstairs to accept service, but Maternal Grandmother stated that "she would hand [the documents] directly to [Mother]." Accordingly, the process server gave the complaint and summons to Maternal Grandmother. Less than one month later, Mother, by and through her counsel, filed a motion to dismiss the petition.

Neither party cites any analogous caselaw in support of their position on appeal regarding this issue. In a different context, the Tennessee Court of Criminal Appeals has stated that a defendant was evading service when the defendant's wife told police that her husband refused to come to the door to speak to the officers. *See* **State v. Burgess**, 532 S.W.3d 372, 392 (Tenn. Crim. App. 2017) (involving several attempts at service). Mother undisputedly engaged in similar conduct in this case. Thus, the undisputed evidence shows that Mother was evading service of process and that substitute service on Maternal Grandmother at Mother's home was appropriate. The trial court therefore did not err in refusing to dismiss the complaint on this basis.

Mother next asserts that the trial court should have dismissed the complaint based on Appellants' failure to include necessary information in the initial petition. Appellants concede that their initial petition was deficient but argue that any deficiencies were cured by the filing of the amended complaint. We agree. As an initial matter, we note that Appellants were permitted to file an amended petition pursuant to Rule 15.01 of the Tennessee Rules of Civil Procedure, which allows one amendment as a matter of course "at any time before a responsive pleading is served[.]" Here, no responsive pleading had been filed at the time Appellants filed their amended petition. Rather, Mother had only filed a motion to dismiss. "It is well-settled in Tennessee that a motion to dismiss is not a responsive pleading" for purposes of Rule 15.01. **Mosley v. State**, 475 S.W.3d 767, 774 (Tenn. Ct. App. 2015) (citations omitted); *see also* **Cordell v. Cleveland Tennessee Hosp., LLC**, 544 S.W.3d 331, 335 (Tenn. Ct. App. 2017), *perm. app. denied* (Tenn. Aug. 17, 2017) (holding that a motion to dismiss was not a responsive pleading under Rule 15.01). As such, the amendment was authorized in this case.

We likewise agree that the amendment essentially cured the deficiencies alleged by Mother. Here, there can be no dispute that the amended pleading generally contains all necessary information that was omitted from the initial petition. Mother asserts, however, that the amendment should not be considered due to the profound deficiencies in the original petition. A similar issue was raised in **In re J.G.H., Jr.**, No. W2008-01913-COA-R3-PT, 2009 WL 2502003 (Tenn. Ct. App. Aug. 17, 2009). Therein, the petitioner filed a termination petition that failed to include a statement regarding appellate rights under Rule 9A of the Rules of the Tennessee Supreme Court. *Id.* at *12. The parent filed a motion to dismiss the petition; the petitioner responded by filing an amendment to the petition to cure the alleged deficiency. *Id.* at *7. The trial court later denied the motion to dismiss and ruled that the amendment would relate back to the initial filing date. *Id.* This Court affirmed, holding that it was not error for the trial court to allow the petitioner to

file an amendment to their petition to cure Rule 9A deficiencies, as no prejudice resulted. *Id.* at \*12 (citing *In re S.R.M.*, No. E2008-01359-COA-R3-PT, 2009 WL 837715, at \*14 (Tenn. Ct. App. Mar. 27, 2009); *see also* Tenn. R. App. P. 36(a) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). We also held that the amendment would relate back to the filing of the original petition for purposes of determining the appropriate time period for certain of the grounds alleged, as the amendment did not constitute a "separate and distinct" petition. *Id.* at \*13.

The deficiencies in this case involve more than Appellants' failure to comply with Rule 9A. Rather the petition also failed to state that Appellants timely consulted the putative father registry, *see* Tenn. Code Ann. § 36-1-113(d)(3)(A)(i), failed to state required statistical information, *see* Tenn. Code Ann. § 36-1-113(2)(C), and failed to state that the petition would forever terminate Mother's parental rights. *See* Tenn. Code Ann. § 36-1-113(d)(3)(C). Although these deficiencies are not trivial, Mother has not asserted in her appellate brief that harm resulted from these deficiencies, particularly given the filing of the amended petition which included the omitted information.[8] *See id.* at \*12 (considering the lack of harm that resulted from the omission). Moreover, Mother has cited no law in which these deficiencies have been held sufficient to dismiss a termination petition where the petition was promptly amended to include the necessary information. Thus, consistent with our decision in *In re J.G.H.*, we conclude that the trial court did not err in declining to dismiss Appellants' initial petition.

Likewise, we conclude that the amended petition in this case was not a "separate and distinct" petition from the original petition, as the facts alleged in the initial petition and the amended petition were largely identical. Consequently, the amended petition will relate back to the filing date of the initial petition. *See also In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. 2013) ("Although the petition was later amended in September 2005, the relevant period for purposes of abandonment is the four-month period immediately preceding the filing of the original petition."); *In re Chase L.*, No. M2017-02362-COA-R3-PT, 2018 WL 3203109, at \*9 (Tenn. Ct. App. June 29, 2018) (citing *In re J.G.H.*, 2009 WL 2502003, at \*13) ("[T]his Court has previously held that where an 'amendment' to a termination petition did not constitute a separate and distinct petition, the proper four month period to consider was the four months preceding the filing of the original petition, not the amendment."). In evaluating Mother's alleged willful failure to visit and support, we therefore consider the four month period preceding

---

[8] Mother asserts that harm resulted because she was forced to defend against the initial petition's allegations that she willfully failed to visit or support in the months before the filing of that petition, not that she was harmed in any way by not being presented with the omitted information at the time of the filing of the initial petition. From what we can discern, Mother was simply not prejudiced by the fact that the initial petition failed to contain certain required statements and data, where Appellants promptly corrected the error.

the filing of the initial petition. *See* Tenn. Code Ann. 36-1-102(1)(A)(i) (stating that abandonment occurs when a parent willfully fails to visit or support in the four months preceding the filing of the termination petition).

Finally, we dispense with Mother's argument that the petition failed to state a claim upon which relief could be granted. Here, the petition alleged that grounds existed to terminate Mother's parental rights because she willfully failed to visit and support the child during the relevant time period and that termination was in the child's best interests. In reviewing a motion to dismiss, the court must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences. *See **Pursell v. First Am. Nat'l Bank***, 937 S.W.2d 838, 840 (Tenn.1996). It is well-settled that a complaint should not be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his or her claim that would warrant relief. *See **Doe v. Sundquist***, 2 S.W.3d 919, 922 (Tenn. 1999); ***Fuerst v. Methodist Hosp. S.***, 566 S.W.2d 847, 848 (Tenn. 1978). After reviewing the allegations in Appellants' amended complaint, we cannot conclude that the complaint fails to state a claim upon which relief may be granted. As such, the trial court correctly denied Mother's motion to dismiss on all the grounds contained therein.

### Juvenile Court Records

Appellants next assert that the trial court erred in denying their request to review certain juvenile court records concerning one of Mother's other children. Specifically, on July 3, 2017, Appellants issued a subpoena to the Sevier County Juvenile Court to release the records of all litigation in which Mother had been involved in the last four years. The Sevier County Juvenile Court Clerk thereafter sent the records under seal to the Robertson County Clerk and Master, having informed Appellants that the trial court would be required to release the records to Appellants. Appellants filed a motion to release the records on July 27, 2017, arguing that the documents were relevant because they involved the removal of another child from Mother's home. Mother responded in opposition to the motion. The trial court orally ruled on the motion at the start of trial, denying the motion on the basis that the records would not be admissible under Rule 608 of the Tennessee Rules of Evidence. On December 11, 2017, the trial court entered a written order denying the motion, noting that it had reviewed the records and "declines to release said records."

On appeal, Appellants assert that release of the records is authorized by Tennessee Code Annotated section 37-1-153. Under section 37-1-153, juvenile court records are subject to inspection only in limited circumstances. For example, the records are open to inspection by judges and staff of the court, the parties to the proceedings, and agencies providing supervision over the children at issue. *See* Tenn. Code Ann. § 37-1-153(a)(1–3). Relevant to this case, section 37-1-153(a)(5) also provides that the records are open to inspection "with permission of the court" to "any other person or agency or institution having a legitimate interest in the proceeding or in the work of the court." Appellants

assert that they have a legitimate interest in the proceeding because the Sevier County Juvenile Court action involved the removal of custody of one of Mother's other children, an issue that directly relates to whether she has made lasting changes to her life making it safe to return the child at issue to her care. *See generally* Tenn. Code Ann. 36-1-113(i) (discussing the best interest factors, including whether parent's home is safe for the child). Generally, we agree with Appellants that they may have a legitimate interest in the records concerning the removal of another child from Mother's care. We are also concerned that the trial court's oral ruling appears to conflate what is discoverable with what is admissible. What is discoverable, however, is generally broader than that which is admissible. *See* Tenn. R. Civ. P. 26.02(a) ("It is not ground for objection [to a discovery request] that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.").

Still, this Court is not permitted to overturn a final judgment "unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process." Tenn. R. App. P. 36; *see also **Duncan v. Duncan***, 789 S.W.2d 557, 562 (Tenn. Ct. App. 1990) (applying Rule 36 to the denial of requested discovery). Like the trial court, we have also reviewed the records from the Sevier County Juvenile Court. After our review of the records, we cannot conclude that any prejudice resulted from the trial court's failure to allow Appellants an opportunity to discover the information therein.

Here, the records do contain a petition for emergency temporary custody filed against Mother alleging certain concerns that necessitated the removal of Mother's child from her custody. "Allegations in pleadings are not, by themselves, evidence of facts." ***Price v. Mercury Supply Co.***, 682 S.W.2d 924, 933 n.5 (Tenn. Ct. App. 1984) (citing ***Hillhaven Corp. v. State ex rel. Manor Care, Inc.***, 565 S.W.2d 210, 212 (Tenn. 1978)). Although the Sevier County Juvenile Court record contains both an order for temporary emergency custody and an agreed order of temporary custody, neither order contains any factual findings as to the correctness of the allegations contained in the petition. Rather, the records simply show that following some allegations, Mother agreed to place temporary custody of one of her children with child's paternal grandparents. Appellants were specifically able to cross-examine Mother as to these facts and she admitted that custody of one her children was temporarily removed. Given that Appellants were able to cross-examine Mother as to the general contents of the records, we simply cannot conclude that a new trial as to any issue is warranted based on Appellants' inability to inspect the records. We therefore proceed to consider the substantive merits of Appellants' termination petition.

### Grounds for Termination

### Abandonment Generally

Abandonment is a statutory ground for termination of parental rights. Tenn. Code Ann. § 36-1-113(g)(1). For purposes of this appeal, Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or a guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or a guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i).[9] A central inquiry a court must make when determining whether a parent abandoned its child pursuant to section 36-1-102(1)(A) is whether the abandonment was willful. *See* Tenn. Code Ann. § 36-1-102(1)(A)(i). This Court has explained the concept of willfulness in parental termination cases:

---

[9] In 2018, the Tennessee General Assembly saw fit to amend our termination of parental rights statutes to remove the element of willfulness from the definition of abandonment by failure to support or visit. See Tenn. Code Ann. § 36-1-102(1)(A)(i) (defining abandonment as, inter alia, "[f]or a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child"). Rather than include willfulness as an element of the ground, Tennessee Code Annotated section 36-1-102(1) now provides that it is an affirmative defense:

For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1)(I), *enacted by* 2018 Tennessee Laws Pub. Ch. 875 (H.B. 1856), *eff.* July 1, 2018. We have previously held that this change will not apply retroactively. See ***In re Gabriel B.***, No. W2017-02514-COA-R3-PT, 2018 WL 3532078, at *4 (Tenn. Ct. App. July 23, 2018) (citing ***In re D.A.H.***, 142 S.W.3d 267, 273 (Tenn. 2004)) ("Because this change is substantive rather than procedural or remedial, however, the amended statute will not be applied retroactively to this case."). As such, we apply the version of the statute at issue when the case was initiated.

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months.

In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing.

Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. Failure to visit or to support is not excused by another person's conduct unless the conduct actually prevents the person with the obligation from performing his or her duty[] or amounts to a significant restraint of or interference with the parent's efforts to support or develop a relationship with the child[.] The parental duty of visitation is separate and distinct from the parental duty of support. Thus, attempts by others to frustrate or impede a parent's visitation do not provide justification for the parent's failure to support the child financially.

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863−64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). For purposes of this case, the burden is on the petitioner to prove willfulness. *See In re: Leroy H.*, No. M2017-02273-COA-R3-PT, 2018 WL 3700917, at *8 (Tenn. Ct. App. Aug. 3, 2018) (discussing the burden to show willfulness); *In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at *17 (Tenn. Ct. App. Apr. 20, 2016) (holding that the petitioner failed to meet its burden to show that the parent's failure to support was willful). "'Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law.'" *In re Navada*, 498 S.W.3d at 593 (quoting *In re Adoption of Angela E.*, 182 S.W.3d at 640).

**Willful Failure to Visit**

- 13 -

We begin with abandonment by willful failure to visit. Tennessee Code Annotated section 36-1-102 defines willful failure to visit as "the willful failure, for a period of four (4) consecutive months, to visit or engage in more than token visitation[.]" Tenn. Code Ann. § 36-1-102(E). "Token visitation" means that "under the circumstances of the individual case, [there is] nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(C). As previously discussed, we consider the four month period prior to the filing of the initial termination petition. *See In re Adoption of Angela*, 402 S.W.3d at 640. As such, the relevant period here is October 6, 2016 to February 5, 2017.

With regard to this ground, the trial court made the following relevant findings:

14. The court finds by clear and convincing evidence that the Mother has willfully abandoned the child, as that term is defined by statute, by not visiting with the child . . . . for four consecutive months next preceding the date of the filing of the petition. The proof showed that during this time period the Mother had the ability to visit . . . , but she chose not to. The Mother offered no reasonable explanation for her decision, except that she was trying to "get her life in order."

15. The Mother briefly saw the child in December, 2016, when the Mother's father brought the child to a wedding that the Mother was attending, but the court finds that this encounter was "token visitation" and not actual visitation for the purposes of determining whether or not the Mother abandoned the child. *See* Tenn. Code Ann. § 36-1-102(1)(C); *In re Keri C.*, 384 S.W. 3d 731, 748 (Tenn. Ct. App. 2010). ("Whether a visit is 'token' under this definition is a fact-intensive inquiry to be decided on a case-by-case basis.").

The evidence does not preponderate against the trial court's finding that Mother failed to engage in anything more than token visitation during the relevant time period. Here, Mother engaged in a single weekend of visitation during the four month period. Other than this visit, Mother's last contact with the child occurred in February 2016, approximately one year prior to the filing of the termination petition. Other than that birthday phone call, Mother had not had visitation with the child since February 2015. Clearly, a single visit, particularly after nearly two years without significant contact, constitutes only token visitation.

Mother asserts, however, that her failure to engage in more than token visitation was not willful, citing her difficult pregnancy and alleged transportation issues. We cannot agree. Here, during the relevant time frame Mother was able to make the journey from her home to attend a family wedding, despite her alleged ill health and transportation woes. Mother also testified that she made other short trips to the area

where Father and the child lived without making any effort to contact the child.[10] Mother's contention that she was unable to maintain visitation during this timeframe therefore rings hollow. Even if we were to credit Mother's testimony regarding her inability to have in-person visitation with the child, there was nothing preventing Mother from attempting to telephone the child. Rather, Mother simply made no effort whatsoever to telephone the child during this time frame, despite the fact that she was well aware of Father's contact information.[11]

Mother also lays the blame for her lack of visitation on her "contentious relationship" with the parties who were designated as supervisors. "A parent's failure to visit may be excused by the acts of another only if those acts actually prevent the parent from visiting the child or constitute a significant restraint or interference with the parent's attempts to visit the child." *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009). Respectfully, the evidence in this case does not rise to the level of interference necessary to excuse Mother's failure to visit. Here, Mother generally made no effort to maintain contact with her son not only in the four months preceding the filing of the petition, but also in the year preceding the petition. *See In re Adoption of Marissa O.R.*, No. W2013-01733-COA-R3-PT, 2014 WL 2475574, at *14 (Tenn. Ct. App. May 30, 2014) (quoting *In re Kaleb N.F.*, No. M2012-00881-COA-R3-PT, 2013 WL 1087561, at *23 (Tenn. Ct. App. Mar. 12, 2013) ("[C]ourts often must consider the parent's actions outside the four-month period in order to assess the willfulness of the parent's actions within the pivotal four-month period, as 'part of the constellation of facts that must be considered to assess willfulness.'"). Only once the petition had been filed did Mother make any real effort to maintain contact with her son. *See* Tenn. Code Ann. § 36-1-102 ("Abandonment may not be repented of by resuming visitation or support subsequent to the filing of any petition seeking to terminate parental or guardianship rights or seeking the adoption of a child[.]"). Mother did not reference a single instance when visitation was specifically requested by Mother and rejected by either Father or any of the approved supervisors. Likewise, Mother made no effort to return to court to change the supervisors who had previously been approved. Finally, we again note that Mother made no effort to even telephone the child during this timeframe. In the totality of the circumstances, we conclude that Father presented clear and convincing evidence that Mother willfully failed to visit the child in the four months preceding the petition.

## Willful Failure to Support

---

[10] Mother testified that Maternal Grandmother did make an effort to contact Father to have the child attend Mother's baby shower during this time frame. The record is not clear as to whether Maternal Grandmother ever made contact with Father. Moreover, there is no dispute that Mother made no effort to obtain visitation on her own behalf during this time.

[11] In December 2016, during Mother's phone call regarding Christmas presents for the child, Mother also asked if the child would be attending Christmas at Maternal Grandmother's home. Father replied that he would not. There is no dispute that Mother did not specifically ask Father to arrange a visit with the child during this call.

- 15 -

We next consider whether the trial court erred in finding clear and convincing evidence to support the ground of abandonment by willful failure to support. In order to satisfy section 36-1-102, a party must prove that the parent has "willfully failed to support or ha[s] willfully failed to make reasonable payments toward the support of the child." Tenn. Code Ann. § 36-1-102(A)(1)(i). "Willful failure to support or to make reasonable payments toward support means 'the willful failure, for a period of four (4) consecutive months, to provide monetary support or the willful failure to provide more than token payments toward the support of the child.'" *In re Adoption of Angela E.*, 402 S.W.3d at 640 (quoting Tenn. Code Ann. § 36-1-102(1)(D)). "Failure to visit or support a child is 'willful' when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so." *In re Audrey S.*, 182 S.W.3d at 864 (citing *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004)). If a parent is financially unable to support a child, then the failure to support is not willful. *Id.* at 824 fn.33. Token support, however, does not prevent a court from finding willful failure to support. *In re Adoption of Angela E.*, 402 S.W.3d at 641. Token support is defined as support "under the circumstances of the individual case, is insignificant given the parents means[.]" Tenn. Code Ann. § 36-1-102(B).

Here, there is no dispute that Mother provided no monetary support for the child in the four months preceding the filing of the initial termination petition, despite knowledge of her duty to do so.[12] Importantly, although the evidence is undisputed that Father never specifically sought support from Mother, her obligation was not excused simply because Father failed to specifically and repeatedly request support, particularly in this case where Mother had been expressly ordered to pay support by the Sumner County Juvenile Court. *Cf. In re Jacobe M.J.*, 434 S.W.3d 565, 572 (Tenn. Ct. App. 2013) (affirming the trial court's finding of willful failure to support despite the parent's argument that there was no court order requiring support and no request for child support from the child's custodian).

Mother notes, however, that she did attempt to provide Christmas gifts for the child in December 2016 by sending a text message to Father inquiring what the child might like for Christmas. According to Mother, however, her effort was rebuffed when Father responded to her request with a statement to the effect that the child was still waiting on an Easter basket promised by Mother months earlier. Mother testified that she believed that the child did still receive the presents that she offered, but that the gifts were kept at Maternal Grandmother's home. Again, we cannot agree that this single, admittedly "smart aleck" statement by Father was sufficient to constitute "significant restraint or interference" with the Mother's efforts to support the child. *In re S.M.*, 149 S.W.3d 632, 642 (Tenn. Ct. App. 2004). Here, Father testified and Mother did not dispute

---

[12] Mother has been previously ordered by the Sumner County Juvenile Court to pay $100.00 per month in support to Father. Mother does not dispute that she received notice of this order.

that other than this instance, Mother made no effort to provide support for the child in the four months preceding the filing of the initial petition.

Mother asserts on appeal, however, that she was unable to provide additional support during the relevant time, as she was unemployed. It is undisputed that Mother worked as a stay-at-home mother of her two younger children during the relevant time frame. Mother also testified that she was unable to work during the relevant four month period because of her high risk pregnancy, which necessitated considerable rest on her part. The evidence shows, however, that Mother's husband is gainfully employed making a "pretty good" income and that Mother and her husband have lived in the same home since 2014. Mother also testified that her husband "works a lot." Although Mother testified that winter can be "really slow" for her husband's job, Mother testified that she and her husband always had sufficient income to pay for the gas needed to make the drive from Mother's home to the town where the child lives, more than three hours away. Indeed, shortly following the filing of the termination petition, Mother began paying support and has paid $700.00 in the less than seven months between the filing of the petition and the trial date—a $300.00 payment in early March 2017, shortly after the filing of the termination petition, as well as a $400.00 payment immediately before trial. Nothing in the record indicates that Mother's household income increased following the filing of the termination petition making her able to pay this amount in March, but unable to pay the amount in the months preceding that date.

We concede that the record on appeal contains no evidence of Mother's specific household income and expenses. In other cases, Tennessee courts have held that the absence of this evidence defeated a claim that a failure to support was willful. *See e.g., **In re Adoption of Angela E.***, 402 S.W.3d at 641 (reversing the trial court's determination of father's willful failure to support where father had paid a not-insignificant amount during the relevant period and "[n]o evidence was introduced concerning [f]ather's monthly expenses[,]" although father was earning $150,000.00 annually); ***In re Noah B.B.***, No. E2014-01676-COA-R3-PT, 2015 WL 1186018, at *8–*9 (Tenn. Ct. App. March 12, 2015) (holding that although mother affirmatively answered that she was working during the four-month time period, DCS failed to prove by clear and convincing evidence she willfully failed to support child because DCS did not provide "evidence of [m]other's employment status, . . . the number of hours she worked, the duration of her employment, her rate of pay, or whether [m]other had assets other than regular income that might contribute to support of the child."). In a recent case, however, we held that the absence of this type of evidence was not fatal to the ground of willful failure to support where other evidence in the record clearly and convincingly established that the parent had the ability pay support during the relevant time frame. *See **In re Addalyne S.***, No. M2017-00958-COA-R3-PT, 2018 WL 1976175, at *12 (Tenn. Ct. App. Apr. 26, 2018), perm. app. denied (Tenn. July 30, 2018).

The same is true in this case. Here, the evidence shows that Mother's household was earning sufficient income to allow Mother to make several nearly four hour trips from her home during the relevant period, as well as a substantial payment toward child support shortly following the filing of the termination petition. Although Mother testified that she was unemployed and ill during her pregnancy in the four months preceding the filing of the initial termination petition, at no point did Mother testify that her household income was insufficient to allow her to make any support payments for the child. Instead, Mother agreed that her situation was "not really an excuse" for her lack of support. Under these circumstances, we must conclude that Mother failed to make more than a token effort at supporting her child during the relevant time period and that her failure was willful. As such, the record supports termination of Mother's parental rights on the ground of willful failure to support.

## Best Interests

Having determined that Appellants have proven at least one ground for termination of Mother's parental rights, we proceed to consider whether Appellants have likewise shown clear and convincing evidence that termination is in the child's best interests. *See White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). Upon establishment of a ground for termination, the interests of the child and parent diverge, and the court's focus shifts to consider the child's best interest. *In re Audrey S*., 182 S.W.3d at 877. Tennessee's parental termination statutes recognize that although a parent may be unfit, terminating that parent's rights may not be in the best interest of the child. *Id.* As the Tennessee Supreme Court recently explained:

> Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555 (citing *In re Audrey S.*, 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id.* When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S.,* 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id.* "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child . . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

*In re Gabriella D.*, 531 S.W.3d 662, 681–82 (Tenn. 2017).

The Tennessee General Assembly has codified certain factors for the court to consider in its determination of whether termination is in a child's best interest. The factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to affect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). A trial court need not find the existence of each enumerated factor before it may conclude that termination is in the child's best interest.

***In re Navada N.,*** 498 S.W.3d at 607.  Therefore, "[d]epending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis." ***Id.*** However,

> this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

***In re Gabriella D.***, 531 S.W.3d at 682. Moreover,

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case.

***In re Audrey S.***, 182 S.W.3d at 878 (citing ***White v. Moody***, 171 S.W.3d at 194).

The trial court made the following findings with regard to the best interest of the child at issue in this case:

> (**a**) **Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian.** Mother claims that she has been drug free for approximately one year. She has maintained consistent telephone contact with the child since the filing of the petition and has visited with the child on four occasions.
>
> (**b**) **Whether the parent or guardian has failed to [a]ffect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible.** There was no evidence at trial offered on this factor.
>
> (**c**) **Whether the parent or guardian has maintained regular visitation or other contact with the child.** The Mother's visitation was largely non-existent prior to the petition to terminate her parental rights being filed. Mother even failed or refused at times to visit the child when she came to the town where the child resided. However, since the filing of the petition, Mother has regularly telephoned the child and has visited on four occasions.

- 20 -

**(d) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child.** It appears to the court, that since the filing of the petition, the Mother has established a meaningful relationship with the child.

**(e) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition.** A change of caretaker and physical environment would likely be detrimental to the child as the child has lived away from the Mother since 2012, and has adjusted to life without her.

**(f) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household.** There was no evidence at trial offered on this factor.

**(g) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner.** The Mother has a significant history with drug abuse which resulted in the Juvenile Court limiting her visitation. Mother has married a convicted felon whose crime was drug related, and who is still on probation.

**(h) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child.** The Mother's drug abuse affects her ability to parent the child. However, Mother claims that she has been drug free for approximately one year.

**(i) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.** The Mother has not paid child support consistent with the child support guidelines, but has paid $700.00 in support since the filing of the petition.

18. Taking into account the foregoing factors, this court is of the opinion that [Appellants] have failed to carry their burden of proof to prove by clear and convincing evidence that a termination of the Mother's parental rights would be in the minor child's best interest.

Although the trial court made findings as to each factor, the trial court's order does not illuminate which factors favor termination or militate against termination. To be sure, some factors clearly do not support termination, such as factors concerning physical abuse. *See* Tenn. Code Ann. 36-1-113(i)(6). Other factors clearly support termination, such as the trial court's finding that a change in caretakers would have a detrimental effect on the child. *See* Tenn. Code Ann. 36-1-113(i)(5). The evidence does not preponderate against the trial court's findings as to either factor.

Other findings and the evidence supporting them, however, are less clear. Here, the trial court found that Mother generally failed to maintain visitation and support prior to the filing of the termination petition, but resumed contact after the petition was filed. The trial court did not specifically state whether these factors militated in favor or against termination. We must conclude that Mother's history of visitation and support favor termination in this case. While the evidence does show that Mother made an effort to maintain contact following the filing of the termination petition, this contact resumed only after a nearly two year absence from the child's life.[13] As such, we cannot conclude that Mother "maintained regular visitation or other contact with the child." *See* Tenn. Code Ann. 36-1-113(i)(3). The same is true of Mother's lack of support, an obligation that she largely ignored until the filing of the termination petition. *See* Tenn. Code Ann. 36-1-113(i)(9).

Other factors, however, do not clearly and convincingly support termination. For example, while there is no dispute that Mother once engaged in illegal activity and drug use, the undisputed proof in the record was that she no longer abused drugs and had not done so for some time.[14] *See* Tenn. Code Ann. 36-1-113(i)(1). There was also no evidence that the physical environment of Mother's home was unsafe or that Mother's mental or emotional status in any way prevented return of the child to her care. *See* Tenn. Code Ann. 36-1-113(i)(8).

---

[13] As previously discussed, the only contact Mother had between February 2015 and December 2016 was a single phone call on the child's birthday.

[14] Appellants make two errors in their brief with regard to this factor. First, Appellants contend that this factor is irrelevant because Mother has not sought "placement" of the child with her. We disagree. Regardless of whether Mother is seeking a change of custody regarding the child, this factor is one we must consider in making our best interest analysis. To hold otherwise, would be to allow parents in other situations to ignore the unsafe environment of their homes in determining the child's best interest simply by stating that he or she was not seeking placement of the child. Clearly, this result was not intended by our legislature.

Second, Appellants assert that even if this factor is relevant, Mother failed to submit evidence "corroborating" her testimony. The burden in this termination petition is on Appellants to present clear and convincing evidence as to both grounds and best interests. *Cf.* **In re Addalyne**, 2018 WL 1976175, at *10 (holding that the burden did not shift to the parent to disprove a ground for termination). As such, it was Appellants' burden to show that Mother continues to abuse drugs, rather than Mother's burden to prove that she does not.

The evidence also shows that Mother is married to a man who also has a history of criminal activity and drug abuse. Unlike Mother, her husband's criminal activity occurred as recent as 2015, when husband was found guilty of violating his probation. It also appears that Mother has chosen to remain willfully ignorant of the charges against Husband, stating that she "had no clue" of the charges against Husband that occurred during their marriage and for which Husband remains on probation. Still, no evidence was presented that Husband was engaging in any illegal activity in the few years preceding the termination trial. As such, this evidence does not clearly militate either in favor or against termination. *See* Tenn. Code Ann. 36-1-113(i)(7).

Finally, the trial court found that Mother has a meaningful relationship with the child. *See* Tenn. Code Ann. 36-1-113(i)(4). The trial court, however, found that this relationship was established "since the filing of the petition[.]" This Court has held that both the existence of a meaningful relationship and the lack of meaningful relationship may be considered important factors in the best interest analysis. *See **In re Addalyne***, 2018 WL 1976175, at *16 ("This Court has previously indicated that in some cases the lack of a meaningful relationship between a parent and child is the most important factor; it is not error for a trial court to place similar weight on the fact that such a relationship exists.").

The parties strongly disagree as to this factor. Both Father and Step-Mother testified that while the child knows Mother, he has no meaningful relationship with her. Indeed, the evidence was undisputed that the child refers to Step-Mother as his "mom," while referring to Mother by her given name. Father also testified that the child never asked about Mother prior to the filing of the termination petition and that the child did not have a close relationship with his siblings on Mother's side due to the lack of contact. Both Father and Step-Mother also testified that the child was "clingy" following visitation with Mother; Appellants conceded, however, that the child did not exhibit any significant emotional or behavioral problems when contact with Mother resumed.

In contrast, Mother and Maternal Grandmother testified that Mother and the child had a close and loving relationship even prior to the filing of the termination petition, as evidenced by their contact at the December 2016 wedding. According to Mother, "[i]t was like we hadn't been away from each other." Mother and Maternal Grandmother also testified that the child has an extremely close and loving relationship with his siblings, Mother's two younger children. Additionally, it was undisputed that Mother's visitation with the child following the filing of the initial termination petition was appropriate. Mother admitted, however, that during some of the visits after the filing of the termination petition, the child was "cold" toward her; Mother attributed the coldness to the fact that Step-Mother attended those visitations, which caused confusion for the child.

The evidence concerning whether Mother maintained a meaningful relationship with the child was therefore largely contradictory. In this situation, the trial court was in a far better position to judge the manner and demeanor of the witnesses and to choose the

- 23 -

narrative that was most credible. *See **In re Navada N.***, 498 S.W.3d 579, 591 (Tenn. Ct. App. 2016). As such, we generally do not overturn a trial court's credibility finding in the absence of clear and convincing evidence to the contrary. *See **Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). In this case, we must therefore affirm the trial court's finding that Mother was able to maintain a meaningful relationship with the child.

From our review of the best interest factors, the factors that weigh in favor of termination appear to be largely evenly matched with the factors that support maintaining the parent-child relationship. *But see **In re Audrey S.***, 182 S.W.3d at 878 (noting that we may not simply tally the number of factors in favor of each side). Here, Mother failed to maintain consistent contact with the child through visitation and support, appearing to only being jolted into action by filing of the termination petition. In some cases, we have held that efforts that occurred only after the filing of the termination petition were "too little, too late," given the circumstances. *See, e.g., **In re Michael***, No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *16 (Tenn. Ct. App. Oct. 6, 2016) (finding mother's efforts "too little, too late" where she had engaged in illegal activity following the filing of the petition and had only been out of drug treatment for two months by the time of trial); ***In re Savannah F.***, No. E2015-02529-COA-R3-PT, 2016 WL 4547663, at *16 (Tenn. Ct. App. Aug. 31, 2016) (holding that parent's action in attending anger management in the weeks before trial was "too little, too late," where the parents continued to deny their role in the exposure to violence that the child experiences); ***In re S.H.***, No. E2013-02007-COA-R3-PT, 2014 WL 1713769, at *8 (Tenn. Ct. App. Apr. 29, 2014) (holding that the parent's efforts were "too little, too late"). In other cases, however, we have concluded that efforts made following the filing of the termination petition were not "too little, too late," where the parent made some efforts prior to the filing of the termination petition and was sober, gainfully employed, and living in a safe and stable home by the time of trial. *See **State v. K.L.K.***, No. E2003-2452-COA-R3-PT, 2004 WL 1496317, at *14 (Tenn. Ct. App. July 6, 2004) (noting that Mother's efforts were not "too little, too late"). From our review of the record, we conclude that while Mother's efforts were largely too late, they were not too little, as like the parent in ***K.L.K.***, by the time of trial, Mother had made substantial progress in providing a safe and stable home for the child and was able to maintain a meaningful relationship with the child despite her absence. As previously discussed, whether a meaningful relationship exists is often a strong factor in determining the child's best interests. *See **In re Addalyne***, 2018 WL 1976175, at *16.

To be sure, Mother's own choices largely removed her from the child's life for a number of years. Additionally, Mother's relationship with husband and her ignorance of his criminal history are troubling to this Court. Yet, the purpose of the best interest analysis is to ensure that termination is ultimately focused on what is best for the child, rather than punishing the parent for his or her misconduct. *Cf. **Lassiter v. Dep't of Soc. Servs. of Durham Cty.***, N. C., 452 U.S. 18, 34, 101 S. Ct. 2153, 2163, 68 L. Ed. 2d 640 (1981) (Burger, C.J., concurring) (noting that the purpose of termination proceedings are

not "punitive" but rather "protective of the child's best interests"). As such, the best interest determination in a termination of parental rights case sometimes involves "a delicate balance between the substantial need to provide the child stability and the interest of the child in maintaining a relationship with his or her biological family." *In re Wesley P.*, No. W2014-02246-COA-R3-PT, 2015 WL 3430090, at *13 (Tenn. Ct. App. May 29, 2015). Here, the particular facts of this case do not support a conclusion that the child's interest in stability is outweighed by the interest of maintaining the child's relationship with Mother and his siblings. Accordingly, Appellants have failed to meet their burden to submit clear and convincing evidence that the child's best interests will be furthered by forever terminating the child's relationship with Mother. As such, the trial court's ruling with regard to the termination of Mother's parental rights is affirmed.

### Attorney's Fees

Mother finally asserts that this Court should award her attorney's fees based on a frivolous appeal. *See* Tenn. Code Ann. 27-1-112 ("When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal."). We do not consider this appeal frivolous and decline to award attorney's fees in this case.

### Conclusion

The judgment of the Robertson County Chancery Court is affirmed and this case is remanded for further proceedings. Costs of this appeal are taxed one-half to Appellants, Eric G. and Jennifer G., and their surety, and one-half to Appellee Kelci G., for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE

- 25 -